Marc S. Bragg, Esquire (SBN 187859)
Law Offices of Marc S. Bragg
3641 Kingsley Street
p: 484 459 1623
f:  619-255-6415
email: GmanVSantana@gmail.com

IN THE SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO, CALIFORNIA

| | |
|---|---|
| Eric Gottesman aka "GMAN", an Individual<br><br>　　　　　　　Plaintiff,<br>v.<br><br>Carlos Santana, an individual dba "Santana Management"; "Santana Management", an unknown business entity; Michael Vrionis, an individual; Steven Vrionis, an Individual dba www.santanaorganicfoods.com and www.santanasalsa.com; Santana Tesoro, LLC, a Nevada limited liability company; Guts & Grace Records, Inc., a Nevada Corporation; Universal Tone Management, LLC a California limited liability company; Cristalino, Inc., a Nevada Corporation; Salvador Santana, an individual dba "Various Business Enterprises" an unknown entity; Hi Fidelity Entertainment, Inc., a California corporation dba www.hifi247.com aka www.11345.com; Dawn DeBisschop, | '16CV2902 H    JLB<br><br>1. COPYRIGHT INFRINGEMENT;<br>2. VICARIOUS COPYRIGHT INFRINGMENT;<br>3. INDUCING COPYRIGHT INFRINGEMENT;<br>4. BREACH OF CONTRACT;<br>5. INTENTIONAL MISREPRESENTATION;<br>6. NEGLIGENT MISREPRESENTATION;<br>7. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;<br>8. UNFAIR BUSINESS PRACTICES Ca B&P §§17200,17500;<br>9. CONSTRUCTIVE TRUST;<br>10. INJUNCTIVE RELIEF. |

GMAN v. Santana, et al.– COMPLAINT - Page 1



an individual dba www.hifi247.com aka
www.11345.com; Constellation Brands
Inc., a Delaware corporation; Casa
Noble Spirits, LLC, a Delaware limited
liability company; Casa Noble Holdings
LLC, a Delaware limited liability
company; Donahue Fitzgerald, LLP, a
California Limited Liability Partnership
dba www.santana.com and
www.carlossantanahats.com; Linton
Hall, an individual; Service First
Specialty Food and Marketing, LLC, a
California limited liability company;
DOE #1 dba www.beltoutlet.com; DOE
#2 dba www.dadshats.com, Double O,
LLC dba www.fedoras.com, Will
Oakley dba www.fedoras.com,
Hats.com, LLC dba www.hats.com,
DOE #3 dba www.hats.com, Glen
Morelli dba www.oldglory.com, GRM
Licensing Group dba
www.oldglory.com, NCC GROUP
Escrow Associates, LLC dba
www.rock.com, DOE #4 c/o Domains
By Proxy dba www.rockabilia.com,
Fred Belinsky dba
www.villagehatshop.com, Bel-Born
Management Corp. dba
www.villagehatshop.com, John Jeffers
dba www.tshirtsubway.com, T Shirt
Subway Ltd. dba
www.tshirtsubway.com, Wal-Mart
Stores, Inc., dba www.walmart.com,
Konstantin Gredesloul dba
www.wanelo.com, Wanelo, Inc., dba
www.wanelo.com; and DOE 1-100.

                    Defendants.

                                    )  JURY TRIAL DEMANDED

GMAN v. Santana, et al.– COMPLAINT - Page 2

# COMPLAINT

Plaintiff Eric Gottesman by and through counsel, Marc S. Bragg, Esq., brings this Complaint and in support states as follows:

## I.    PRELIMINARY

1. This is an action by ERIC GOTTESMAN, an individual, ("GMAN"), to recover damages arising from Defendants' infringements of his separate copyrights in numerous original works of art created by him, all without his knowledge or consent.

2. GMAN has the right and standing to enforce his exclusive rights in the works identified in this Complaint including all copyrightable component parts, the right of copying, distribution, publishing, sale and the exclusive right to create derivative works.

3. The works identified herein are original works of the visual arts and are subject to copyright protection under the Copyright Act, 17 U.S.C. §§101 et seq.

4. GMAN has complied in all respects with the U.S. Copyright Act and all other laws governing copyright, and has secured the exclusive rights and privileges in and to the copyrights received from the Register of Copyrights via the certificates of registration and/or registrations pending in connection with each cause of action stated below. *See* CHART ONE.

5. Defendants separately, and at times jointly, infringed GMAN's works by copying, distributing, publishing, selling and/or making unauthorized derivative works of GMAN's original works of art for their commercial and financial gain on a national and international scale.

## II.    JURISDICTION

6. This Court has subject matter jurisdiction over Plaintiff's copyright infringement claims and related claims pursuant to 17 U.S.C. §§ 101, et. seq., and 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because GMAN's claims under Federal Law and his state law claims derive from a common nucleus of operative facts.

8. The Court has personal jurisdiction over Defendants.

9. All Defendants either live in in California, solicit, transact, and are doing business within the State of California, or have copied, distributed, published, and/or sold unauthorized copies of GMAN's art and have committed unlawful and tortuous acts both within and outside the State of California thereby causing injury in California.

## III.    INTRADISTRICT ASSIGNMENT

10. Since this matter is based in copyright it may be assigned to any of the three divisions of the District Court for the District of California.

## IV.    VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(a).

## V.    THE PARTIES
### THE ARTIST PLAINTIFF

12. GMAN is a long term Southern California resident of twenty-five years, and can be contacted for purposes of this action via his counsel of record.

13. GMAN is the youngest of four generations of renowned artists; his Great Grandfather, George Harper, was a commercial illustrator and fine artist who created some of the first automotive advertisements in the mid 1920's. His mother, Marty Noble, is a contemporary world renowned commercial and fine artist with over 230 art-related books in print.

14. The core of GMAN's art lives at the intersection of music and fashion.

15. GMAN's professional career took off in his early 20's when he began working for Paradise Artists, a national booking agency based in Ojai, California; he created their logo, their sign, and their look and designed artwork to advertise Paradise Artists' tours for Edgar Winter, Rick Derringer, Steppenwolf, Sid Caesar, Phyllis Diller, Maynard Ferguson, Improv Comedy Club and other entertainment and music related entities.

16. Over the years, GMAN's extensive client list has included original works of art and designs for Carlos Santana, the Jimi Hendrix Estate, Tom Petty and the Heartbreakers, MGR Entertainment on behalf of Bob Dylan, Billy Idol, Los Lonely Boys, Sex Pistols, Metallica, Red Hot Chili Peppers, Signatures Network/Live Nation, Bravado USA, and many others.  GMAN has been retained to remaster classic iconic artwork such as the Beatles "Sgt. Pepper's Lonely Hearts Club" album cover.

17. He has extensive skill and talent in freehand airbrush, hand drawn and digital illustration, graphic design, photo retouching, and archive remastering, branding, and designing clothing lines, apparel, and other epherma, primarily for rock music licensees.

18. Each of the individual pieces of visual art created by GMAN at issue in this action are of obvious high production value and easily discernable as a professional and original work of art.

19. Each of the art and designs at issue in this action is either registered to GMAN with the United States Copyright Office or has an application for registration pending.

20. True and complete copies of Registration certificates and/or Applications issued by the U.S. Copyright Office for GMAN's works along with the images that are known to have been infringed by the defendants named in this Complaint are attached hereto as Exhibits [1-31] and summarized in the following CHART ONE. (Index of Exhibits in Appendix "A").

<u>CHART ONE – GMAN'S COPYRIGHTED WORKS</u>

| Exhibit# | Registration /Application# | Title |
|---|---|---|
| 1 | 1-3486761741_Application_20160826_151635 | Los Dove & Lotus |
| 2A | 1-4111476717_Application_20161114_160002 | Mirror Abraxas |
| 2B | 1-3489473451_Application_20160913_133126 | Mirror Abraxas Collection |
| 3A | 1-4111476691_Application_20161114_154458 | Hand drawn Abraxas Angel |
| 3B | 1-3489473355_Application_20160913_133738 | Super Abraxas Final |
| 4 | 1-3489212544_Application_20160912_184423 | S.O.C.C. 2011 Men's |
| 5 | 1-3489212694_Application_20160912_184425 | S.O.C.C. 2011 Women's |
| 6 | 1-3489473204_Application_20160912_184429 | Universal Tone Feelmore |
| 7 | 1-3995388001_Application_20160915_172251 | All That I Am Aggregate Front |
| 8 | 1-3995388119_Application_20160915_172252 | ALL THAT I AM Men's Front |
| 9 | 1-3995388183_Application_20160915_172253 | ALL THAT I AM Women's Front |

GMAN v. Santana, et al.– COMPLAINT - Page 6

| 10 | 1-3995467317_Application_20160915_172255 | ALL THAT I AM Back European Tour |
| 11 | 1-3995467453_Application_20160915_172256 | ALL THAT I AM Back South American Tour |
| 12 | 1-3998336084_Application_20160915_172312 | Montreaux New Back 2a |
| 13 | 1-3998336007_Application_20160915_172310 | Montreux New Back 1a |
| 14 | 1-3998335796_Application_20160915_172309 | Dance To The Beat of My Drums Back |
| 15 | 1-3998335759_Application_20160915_172307 | Dance To The Beat of My Drum Front |
| 16 | 1-3568650793_Application_20160915_172247 | Santana Sunburst |
| 17 | 1-3995467642_Application_20160915_172258 | Lion Bandana Original 1fRev1 (Los Bandana) |
| 18 | 1-3995467922_Application_20160915_172259 | LION BANDANA 1f 2006 Revision |
| 19 | 1-3995467973_Application_20160915_172301 | LION BANDANA v2.2a 2013 Revision |
| 20 | 1-3995468083_Application_20160915_172302 | NEW LION rev3a T-Shirt |
| 21 | 1-3995468140_Application_20160915_172306 | NEW LION with Stylized Border |
| 22 | 1-3489473380_Application_20160903_123852 | SS YELLOW |
| 23 | 1-3489473426_Application_20160903_123854 | SS BLUE |
| 24 | 1-3978484351_Application_20160908_140707 | SSB LOGO |
| 25 | VA 1-968-849 | Mango Salsa Display |
| 26 | VA 1-968-848 | Organic Foods Website Banner |
| 27 | VA 1-968-846 | Mole Sauce Carrier Tray |
| 28 | VA 1-968-847 | Super Promo Co-Op |

GMAN v. Santana, et al.– COMPLAINT - Page 7

| 29 | VA 1-968-844 | Mango Salsa Carrier Tray |
| 30 | VA 1-968-850 | Mango Salsa 32 oz jar label |
| 31 | 1-4061124631_Application_20161007-143437 | Taste of Chicago 2005 |

### THE "ELECTRIC CHURCH"

21. CARLOS SANTANA ("SANTANA") is a well-known and established musical artist who is believed to currently maintain a primary business address at 2375 E. Tropicana Ave., Suite 8, #270, Las Vegas, NV. Exhibit "32".

22. In or about 2003, GMAN joined a Fullerton, Ca., based company that was a major rock and roll merchandise licensee; there, he created graphics for bands, celebrities, children's sportswear, casinos, and the like, and designed artwork for rock and roll legends such as the Rolling Stones, Bob Marley, Grateful Dead, Led Zeppelin, The Who, The Clash, The Ramones, Jimi Hendrix, and many others.

23. GMAN was eventually placed in charge of the Fullerton company's art divisions, premiere/private labels, music/licensing and biker divisions where he created the Evel Keneivel line and designed art for renowned motorcycle enthusiasts like Paul Yaffe and Roger Bourget which included providing new collections, catalogues and displays for trade shows. He oversaw the complete operation of these divisions resulting in an annual sales boost to an all-time high.

24. GMAN created and maintained a steady flow of new art for buyers from Wal-Mart, JC Penney, Kohl's, Nordstroms, Hot Topic, and other large retail outlets as well as Casino buyers from the MGM Grand, Bellagio, Caesars Palace, Mandalay Bay and Hard Rock Casino.

25. SANTANA was a client of that agency and on his behalf, that agency managed the majority of SANTANA's licensing activities in connection with collateral material such as his branded clothing products.

26. During the above time period, SANTANA felt the Fullerton company was not providing his organization with the time and attention that his branding and commercial activities required.

27. Upon information and belief, GMAN alleges that the Fullerton company was bootlegging Santana merchandise in foreign markets, in particular in Mexico and not paying Santana the royalties therefrom. The Fullerton company had internally decided not to give SANTANA's domestic line the same time and attention it was devoting to other brands since the profit margin on the bootlegged merchandise being sold out of the U.S. was higher than the domestic sales, and they wanted to put some distance between themselves and SANTANA.

28. Accordingly, SANTANA was experiencing a great deal of frustration and discontent with the Fullerton company because he was losing out on the commercial gain and profits he believed he was entitled to in connection with the sale and licensing of his products and brand.

29. During this same time period, GMAN was in the process of separating from the Fullerton based company.

30. GMAN was contacted by Mr. DeSerpa, Art Director for the SANTANA organization, identified at that time as "SANTANA MANAGEMENT" (an unknown business entity) and was asked by him to create and deliver unique works of art for an event SANTANA had partnered with the National Hot Rod Association (NHRA).

31. SANTANA engaged GMAN as an independent contractor to create the art and design for the merchandising and collateral materials for the event

utilizing SANTANA's image and reputation to increase the marketability of the promotional items being sold in connection with the NHRA event.

32. As a result, GMAN created the co-branded NHRA/ SANTANA pit crew shirts for NHRA drivers Cruz and Tony Pedregon, along with other retail merchandise for the NHRA event.

33. SANTANA was so impressed with GMAN's art and results that he flew GMAN to his home and there laid out his vision for creating a unique and original brand that could take his fledgling and struggling clothing lines and related retail products to the next level so as to be a multi-million dollar enterprise.

34. SANTANA told GMAN that he believed GMAN was the artist that had the ability to "turn SANTANA into a brand" by melding the spirit and philosophy of SANTANA's music with the style of art that was SANTANA's passion to create a commercially viable brand.

35. After SANTANA laid out his vision for his company to GMAN, SANTANA invited GMAN into SANTANA's very private and protected sanctuary where very few were ever admitted, an area in his home he dubbed the "Electric Church".

36. The "Electric Church" concept was a belief held by Jimi Hendrix, that electric music (such as that created by Jimi's band, The Jimi Hendrix Experience) brings out emotions, feelings and ideas in people as well as fosters spiritual maturity.

37. In an interview on the Dick Cavett Show in 1969, Cavett asked Hendrix about the Electric Church. Hendrix replied by saying that he designed his music so that it would be able to go "inside the soul of the person, and awaken some kind of thing inside, because there are so many sleeping people". The three "high priests" of the Electric Church were Jimi

Hendrix, Buddy Miles, and Carlos Santana. *See* http://musicofourheart.tumblr.com/post/81140854660/the-electric-church-high-priests-jimi-hendrix; and https://musicofourheart.me/2014/03/29/the-electric-church-high-priests-jimi-hendrix-buddy-miles-and-carlos-santana/.

38. SANTANA had named the area at his home where he maintained his private art and rock memorabilia collection the "Electric Church". Being allowed entrance to SANTANA's Electric Church was considered an honor.

39. SANTANA left GMAN alone in the Electric Church to view, study, and record SANTANA's private art collection so he would gain a thorough understanding of the character and style of art that SANTANA wanted to use to visually convey SANTANA's musical philosophy in a commercially successful way.

40. Left alone in the Electric Church, GMAN photographed SANTANA's private art collection after which, GMAN left and began creating numerous original works of art which he initially submitted to SANTANA and then his Art Director for evaluation purposes only.

41. As a result of the above, at all relevant times, SANTANA and GMAN created a personal relationship which grew out of SANTANA's interest in GMAN's artistic ability.

42. GMAN's ongoing contact for submission of art and concepts to the SANTANA MANAGEMENT was SANTANA's Art Director, agent and employee, Mr. Dan DeSerpa.

43. Upon information and belief, GMAN alleges that after SANTANA himself, Mr. DeSerpa was SANTANA MANAGEMENT's official point of contact for the submission, negotiation, management and contracting of SANTANA's licensing agreements with third party artists, including GMAN.

GMAN v. Santana, et al.– COMPLAINT - Page 11

44. GMAN submitted his works in good faith through Mr. DeSerpa until Mr. DeSerpa was separated from SANTANA MANAGEMENT, at which time, Mr. DeSerpa was replaced by Ms. Kristen Parcell.

45. GMAN continued to submit works through Ms. Parcell, until, upon information and belief, she resigned due in part to her learning of some of SANTANA MANAGEMENT's infringing activities in connection with GMAN's works identified in this Complaint.

46. Upon information and belief, SANTANA MANAGEMENT were at all relevant times aware of and ratified the limited scope and use license agreements entered into with GMAN via their Art Directors, and/or were aware that the works were entrusted to SANTANA MANAGEMENT for evaluation purposes only and with no agreement or intent that they be copied or distributed by anyone.

47. Mr. Deserpa and/or Ms. Parcell were authorized in their respective capacities as agents and/or employees of SANTANA MANAGEMENT to ratify and did ratify the limited scope, use, and purposes for the works submitted by GMAN to SANTANA MANAGEMENT as described in this Complaint.

**THE DEFENDANTS**

**DEFENDANT CARLOS SANTANA**

48. SANTANA, individually, dba "SANTANA MANAGEMENT" (an unkown business entity) and by and through the defendant individuals and entities named below, has created and grown a large commercial enterprise within the clothing, merchandising, and licensing industries that are ancillary to his musical empire by leveraging his rock persona via the infringements of

GMAN's art used to advertise, merchandise and create SANTANA's retail product lines described below.

49. A significant portion of SANTANA's presence and success in his retail product, merchandising and licensing businesses is founded upon the branding, image, and original works of art created and copyrighted by GMAN.

**DEFENDANT MICHAEL VRIONIS ("VRIONIS")**

50. GMAN is informed and believes and so alleges that all times relevant to GMAN's claims, MICHAEL VRIONIS was SANTANA's brother-in-law, a resident of San Rafael, Ca. and maintained a primary business address at 121 Jordan Street, San Rafael, CA.

51. Upon information and belief, GMAN alleges that VRIONIS is SANTANA's personal manager, controls SANTANA MANAGEMENT and the various Defendant SANTANA entities named herein, and coordinated and exercised control over the infringements described herein in his capacity as officer, director, manager and/or co-owner of the SANTANA Defendants.

52. As such, VRIONIS is strictly liable for all infringements alleged in this Complaint.

**DEFENDANT SANTANA TESORO, LLC**

53. GMAN is informed and believes, and based thereon alleges, that SANTANA TESORO, LLC was originally a Delaware LLC ("TESORO DE") shared a primary business address at 121 Jordan Street, San Rafael, CA., with VRIONIS, and was initially registered in California as a foreign entity that was later "canceled" with the California Secretary of State. Exhibit "33".

54. Upon information and belief, GMAN alleges that SANTANA TESORO, LLC ("TESORO" – the active Defendant in this case), was organized in the State of Nevada on or about the time SANTANA relocated from the San Rafael area to Las Vegas, maintains a primary business address at 6000 S. Eastern Ave., Suite A, Las Vegas, NV., 89119 along with VRIONIS, and assumed all of TESORO DE's assets, liabilities and obligations.  Exhibit "34".

55. DEFENDANT TESORO designated DEFENDANT VRIONIS as its Registered Agent, and DEFENDANT GUTS & GRACE RECORDS, Inc., as its Officer / Manager. Exhibit "35".

56. GMAN is informed and believes and so alleges, VRIONIS and SANTANA utilize TESORO as an official licensing entity for the promotion, distribution and sale of products leveraging SANTANA'S public notoriety via various websites, promotional and marketing activities, and the sale of retail products, all of which are controlled personally by VRIONIS and SANTANA for commercial and financial gain.

57. SANTANA and VRIONIS were or should have been aware of this Defendant's infringing use of GMAN's copyrights which were contributed to and induced by this Defendant as more particularly described below.

58. Upon information and belief, GMAN alleges that at all relevant times, SANTANA and VRIONIS retained controlling interests in both TESORO entities and that they were aware and/or caused the infringements by this Defendant as alleged in this Complaint making these individual defendants strictly liable for the infringements of GMAN's copyrights caused by this Defendant.

**DEFENDANT GUTS & GRACE RECODS, Inc.**

GMAN v. Santana, et al.– COMPLAINT - Page 14

59. Defendant Guts & Grace Records, Inc., ("GUTS & GRACE"), the "Officer / Manager" of DEFENDANT TESORO is a Nevada state corporation formed in 2010, shares a primary business address with TESORO and VRIONIS at 6000 S. Eastern Ave Ste. 6A, Las Vegas, NV, has also designated VRIONIS as its Registered Agent, Secretary and Treasurer, and has designated SANTANA as its President and Director. Exhibit "35".

60. As the Manager / Officer of TESORO, Defendant GUTS & GRACE, and its shareholders, officers, and directors, in particular, SANTANA and VRIONIS are strictly liable for all infringements of TESORO. Ex. "32".

61. SANTANA and VRIONIS were or should have been aware of this Defendant's infringing uses of GMAN's copyrights which were contributed to and induced by this Defendant as more particularly described below.

62. Upon information and belief, GMAN alleges that at all relevant times, SANTANA and VRIONIS retained controlling interests in GUTS & GRACE and that they were or should have been aware of and/or caused the infringements by this Defendant as alleged in this Complaint making these individual defendants strictly liable for this Defendant's infringements of GMAN's copyrights as described below.

**DEFENDANT UNIVERSAL TONE MANAGEMENT**

63. Upon information and belief, GMAN alleges that Defendant UNIVERSAL TONE MANAGEMENT, LLC., ("UNIVERSAL") is a California LLC, which at all relevant times was organized, owned, and/or managed by SANTANA and VRIONIS, and occupied the same primary business address as did TESORO  DE before TESORO DE was "cancelled" with the California Secretary of State. Exhibit "36".

GMAN v. Santana, et al.– COMPLAINT - Page 15

64. GMAN is informed and believes and so alleges, VRIONIS and SANTANA also utilize UNIVERSAL as the "official licensing entity" for the promotion, distribution and sale of their products by leveraging SANATA'S public notoriety via infringements of GMAN's works on various websites and promotional activities controlled and owned by them along with other third parties for commercial and financial gain.

65. SANTANA and VRIONIS were or should have been aware of this Defendant's infringing uses of GMAN's copyrights which were contributed to and induced by this Defendant as more particularly described below.

66. Upon information and belief, GMAN alleges that at all relevant times, SANTANA and VRIONIS retained controlling interests in UNIVERSAL and that they were aware of the infringements alleged in this Complaint making these individual defendants strictly liable for the infringements of GMAN's copyrights caused by this Defendant.

**DEFENDANT CRISTALINO, INC**

67. DEFENDANT CRISTALINO, INC., is a Nevada based organization, operated primarily by VIRONIS and is believed to operate out of the same primary business address of 2375 E. Tropicana Ave., Suite 8 270, Las Vegas, NV., 89119 ("CRISTALINO") as SANTANA; at all relevant times, CRISTALIINO was under the supervision and control of VRIONIS as its Chief Operating and/or Executive Officer, Secretary, and Treasurer, and SANTANA as its President. Exhibit "37".

68. SANTANA and VRIONIS were or should have been aware of this Defendant's infringing uses of GMAN's copyrights which were contributed to and induced by this Defendant as more particularly described below.

GMAN v. Santana, et al.– COMPLAINT - Page 16

69. Upon information and belief, GMAN alleges that at all relevant times, SANTANA and VRIONIS retained controlling interests in CRISTALINO and were aware of the infringements caused by this Defendant as alleged in this Complaint making these individual defendants strictly liable for the Defendants' infringements of GMAN's copyrights as described below.

70. Upon information and belief, GMAN alleges that this Defendant was created to assume all the prior and ongoing promotional, licensing and branding activities of the SANTANA entities identified herein that have infringed GMAN's copyrights and accordingly is strictly liable for all infringements of those other entities.

**ALTER-EGO ALLEGATIONS - "THE SANTANA DEFENDANTS"**

71. Upon information and belief, GMAN alleges that at all relevant times, DEFENDANTS SANTANA, VRIONIS, the TESORO entities, UNIVERSAL, GUTS & GRACE, and CRISTALIINO (collectively referred to as "THE SANTANA DEFENDANTS").

72. Upon information and belief, GMAN alleges that some of the corporations, limited liability companies, and entities identified as THE SANTANA DEFENDANTS and DOE 5-15 (occasionally collectively referred to as the "ALTER EGO CORPORATIONS") individually and jointly, by and through their related entities, managers, officers, directors, and shareholders knowingly infringed GMAN's copyrights for their own commercial and financial gain.

73. GMAN is informed and believes, and based thereon alleges, that at all relevant times SANTANA and VRIONIS personally maintained a significant financial and controlling interest in the TESORO entities, UNIVERSAL, CRISTALINO, and GUTS & GRACE and were aware of

and controlled, and/or should have been aware of each of these entities' unauthorized and infringing uses of GMAN's copyrights.

74. THE ALTER EGO CORPORATIONS were at all times relevant the alter ego corporations of individual Defendants SANTANA and VRIONIS and are indistinguishable legally by reason of the following:

(a) GMAN is informed and believes and so alleges that said individual defendants, at all times herein mentioned, dominated, influenced and controlled each of the ALTER EGO CORPORATIONS and the officers thereof as well as the business, property, and affairs of each of said corporations;

(b) GMAN is informed and believes and so alleges that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between said individual defendants and each of the ALTER EGO CORPORATIONS such that it would create an injustice to recognize any legal distinction; the individuality and separateness of said individual defendants and each of the ALTER EGO CORPORATIONS has ceased;

(c) GMAN is informed and believes and so alleges that, at all times since the incorporation of each, each ALTER EGO CORPORATION has been and now is a mere shell and naked framework which said individual defendants used as a conduit for the conduct of their personal business, property and affairs which in particular included the intent to knowingly utilize their separate entities to cause confusion as to the true source and responsible parties for causing, contributing to, and/or inducing the infringements of GMAN's works;

(d) GMAN is informed and believes and so alleges that, at all times relevant, ALTER EGO CORPORATIONS have owners, directors, and officers in common including SANTANA and/or VRIONIS, are believed to each

employ the same employees and employ the same attorney, occupy the same physical location, and have commingled funds, assets, and failed to segregate each entity and follow corporate formalities as required by law so that no legal distinction between the entities and the individuals can be discerned.

75. GMAN is informed and believes and so alleges that, at all times relevant hereto, the individual defendants SANTANA and VRIONIS and the ALTER EGO CORPORATIONS acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

76. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the ALTER EGO CORPORATIONS would, under the circumstances, sanction a fraud and promote injustice in that GMAN would be unable to realize relief upon any judgment in his favor absent impugning liability personally to the individual defendants for the infringements and pirating of GMAN's works as alleged in this Complaint.

**DEFENDANT STEVEN VRIONIS**

77. GMAN is informed and believes and so alleges, that Defendant STEVEN VRIONIS is the son of MICHAEL VRIONIS, and, along with UNIVERSAL, are the registrants, owners, operators, technical and administrative supervisors of the domains and websites at www.santanaorganicfoods.com and www.santanasalsa.com. Exhibit "38".

78. DEFENDANTS STEVEN VRIONIS and UNIVERSAL are aware of, and/or directly caused, contributed to and/or induced the infringements of GMAN's works occurring on the above websites, and as such, are strictly

liable, along with THE SANTANA DEFENDANTS, for the infringements alleged in connection with the unauthorized copying, publication, distribution and creation of unauthorized derivative works of GMAN's art at the above domains and websites for these Defendants' joint and several commercial and financial gain.

**DEFENDANT SALVADOR SANTANA**

79. SALVADOR SANTANA ("SALVADOR"), an individual, is believed to be the son of SANTANA, is a musician, and is believed to maintain a primary business address at 13351 Riverside Dr., Suite 344, Sherman Oaks, Ca., 91423 and conducts business at and/or through the UNIVERSAL address as well, and dba "Various Business Enterprises" an unknown entity. In the alternative, "Various Business Enterprises" is a California corporation owned and operated by Defendant SALVADOR and is believed to have participated in the infringements attributable to SALVADOR.

80. SALVADOR owns and operates a domain and website at http://www.salvadorsantana.com for the purposes of this Defendant's commercial and financial gain. Exhibit "43".

81. The http://www.salvadorsantana.com website is hyperlinked to and from the website located at http://www.santana.com.

82. SALVADOR knew or should have known he infringed GMAN's copyrights when he copied, published, and distributed GMAN's works described below to the public at large for his own commercial and financial gain without GMAN's authorization or consent on his websites and at www.hifi247.com, www.11345.com, and www.ebay.com and other commercial distribution channels.

**DEFENDANTS HI FI FIDELITY and DAWN DeBISSCHOP**

83. Defendant Hi Fidelity Entertainment ("HI FI") is believed to be a California corporation with its place of business at 15 Commercial Blvd., Novato, Ca., 94949 and/or at 999 Andersen Dr., Suite 140, San Rafael, Ca., 94901.

84. Upon information and belief, GMAN alleges that DEFENDANT DAWN DeBISSCHOP ("DeBISSCHOP") has been the President of HI FI from 1997 to 2016, and in that capacity, managed and controlled its licensing, merchandising, online and retail operations including exerting control over the relevant infringing conduct attributed to HI FI as described in this Complaint. Exhibit "42".

85. DEFENDANT DeBISSCHOP owns, operates and manages the domains and websites located at http://www.Hifi247.com, http://santana.hifi247.com and previously at http://www.11345.com. Exhibits "39"and "40".

86. Upon information and belief, GMAN alleges that HIFI and DeBISSCHOP previously owned and operated a website at www.11345.com (as a division) and during that website's operation, HIFI, along with THE SANTANA DEFENDANTS and DEFENDANT SALVADOR SANTANA directly and/or indirectly knowingly infringed GMAN's copyrighted works copied and distributed through that website for their own commercial and financial gain.

87. The website posted at http://www.santana.com bears a copyright symbol in the name of "Hi Fidelity Entertainment" (refers back to the "11345.com" website) and is believed to be co-owned, co-controlled, co-supervised and/or co-partnered with and between THE SANTANA DEFENDANTS, SANTANA MANAGEMENT, HIFI, and DeBISSCHOP for commercial and financial gain. Exhibit "41".

88. DEFENDANT HIFI describes itself as a "licensed merchandiser" for SANTANA and promotes its hifi247.com website as the "portal to the official online stores and a wide range of quality merchandise from industry leaders" such as SANTANA. HIFI declares it is "your best course for top quality licensed merchandise." Exhibit "55".

89. As the President and owner of DEFENDANT HIFI, DeBISSCHOP, manages and controls the content on HIFI's websites, knew of or should have known of DEFENDANT HIFI, THE SANTANA DEFENDANTS and DEFENDANT SALVADOR SANTANA's infringements of GMAN's copyrights occurring on these websites and the products offered through these websites, and is strictly liable for all such infringements.

90. HIFI, DeBISSCHOP, SALVADOR SANTANA and THE SANTANA DEFENDANTS profited off of the infringements occurring on the HIFI websites and products bearing those infringements sold through the HIFI websites for their own commercial and financial gain.

91. SANTANA and VRIONIS knew, or should have known of these Defendants' infringing uses of GMAN's copyrights on the HIFI websites, which infringements were contributed to and induced by THE SANTANA DEFENDANTS as more particularly described below.

**DEFENDANT TEQUILA DISTRIBUTORS**

92. At all relevant times, Casa Noble Holdings LLC, is believed to be a Delaware limited liability company ("CASA NOBLE") with a primary business address at 207 High Point Dr., Victor, NY., that received an equity investment from SANTANA and negotiated an agreement with SANTANA and/or entities that he controlled that allowed CASA NOBLE to utilize

GMAN v. Santana, et al.– COMPLAINT - Page 22

SANTANA's likeness to promote CASA NOBLE's tequila products for their respective commercial and financial gain. Exhibit "44".

93. Constellation Brands Inc., ("CONSTELLATION") is believed to be a Delaware corporation listed on the New York Stock Exchange with the stock symbol ("STZ") and a primary business address at 207 High Point Drive, Building 100, Victor, NY 14564. Exhibit "46".

94. Upon information and belief, GMAN alleges that CONSTELLATION BRANDS is the successor in interest to CASA NOBLE via its acquisition of CASA NOBLE in or about September, 2014, and has it-self recopied, redistributed, published and thereby infringed GMAN's copyrighted "S.O.C.C. Men's" work as described more particularly below.

95. CONSTELLATION is the owner, registrant, administrator and technical operator of the domain name and website at www.santanatequila.com, which is believed to have been formerly operated by CASA NOBLE.

96. GMAN is informed and believes, and based thereon alleges, that at all relevant times SANTANA was aware and/or should have been aware of each of these defendants' joint and several infringing uses of GMAN's copyrights which infringements were contributed to and induced by THE SANTANA DEFENDANTS, and SANTANA in particular, to increase the value of his personal equity investment in CASA NOBLE, all as described more particularly below.

**DEFENDANTS SERVICE FIRST and LINTON HALL**

97. GMAN is informed and believes, and based thereon alleges, SERVICE FIRST SPECIALTY FOOD AND MARKETING, LLC ("SERVICE FIRST") is a California LLC with a primary business address at 7705 East Shore Drive, Sacramento, Ca., 95831.

98. At all relevant times, Defendant Linton Hall ("HALL") was the managing member and majority owner of SERVICE FIRST.

99. SERVICE FIRST promotes, packages, and distributes various food products through entities such as COSTCO that included a line of salsas for commercial and financial gain.

100. At all relevant times, GMAN was led to believe by these Defendants that all of its products and the websites featuring any of his works licensed to SERVICE FIRST for SERVICE FIRST products were exclusively owned and controlled by SERVICE FIRST other than Costco or similar retailers.

101. As described more particularly below, SERVICE FIRST engaged GMAN to develop original works of art for use on SERVICE FIRST's salsa bottle labels and its related products under a limited use license.

**ALTER EGO ALLEGATIONS – SERVICE FIRST**

102. GMAN is informed and believes and so alleges that SERVICE FIRST was at all times relevant the alter ego corporation of individual Defendant HALL and DOE 16-20 by reason of the following:

(a) GMAN is informed and believes and so alleges that HALL and DOE 16-20, at all times herein mentioned, dominated, influenced and controlled SERVICE FIRST and the officers thereof as well as the business, property, and affairs of each of said corporation;

(b) GMAN is informed and believes and so alleges that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between HALL, DOE 16-20 and SERVICE FIRST; the individuality and separateness of HALL, DOE 16-20 and SERVICE FIRST has ceased.

(c) GMAN is informed and believes and so alleges that, at all times since the incorporation of SERVICE FIRST, SERVICE FIRST has been and now is a

mere shell and naked framework which HALL and DOE 16-20 used as a conduit for the conduct of his personal business, property and affairs which in particular included the intent to knowingly utilize GMAN's works for unauthorized purposes without paying GMAN for such use.

103. GMAN is informed and believes and so alleges that, at all times herein mentioned, SERVICE FIRST was created and continued pursuant to a plan, scheme and device conceived and operated by HALL and DOE 16-20, whereby the income, revenue and profits of HALL resulting from the infringements of GMAN's works was diverted by HALL to themselves.

104. GMAN is informed and believes and so alleges that, at all times herein mentioned, SERVICE FIRST was and is undercapitalized and insolvent.

105. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of SERVICE FIRST would, under the circumstances, sanction a fraud and promote injustice in that GMAN would be unable to realize any judgment in his favor.

**DEFENDANT DONAHUE FITZGERALD, LLP**

106. DEFENDANT Donahue & Fitzgerald, LLP, is a California Limited Liability Partnership and maintains a primary business address located at 1999 Harrison Street, 25th Floor, Oakland, Ca., 94612 ("DONAHUE").

107. Upon information and belief, GMAN alleges that DONAHUE was at all relevant times organized for the purpose of providing legal services to its clients via attorneys licensed by the State Bar of California. As such, DONAHUE is subject and limited to conducting any businesses ancillary to the practice of law in conformity with all applicable state laws, statutes and regulations, applicable to the practice of law and any ancillary businesses it

conducts including the online retail and marketing operations it owns, administers, and controls.

108. DONAHUE is the registrant, administrator, and technical operator of the domains and websites at www.santana.com and www.carlossantanahats.com. Exhibits "50"and "52".

109. Upon information and belief, GMAN alleges that DONAHUE owns, administers, controls and manages these domains and websites for direct and/or indirect commercial and financial gain.

110. DONAHUE was aware or should have been aware of the infringing uses of GMAN's works occurring at these two domains and websites which infringements were contributed to and induced by DONAHUE all as more particularly described below.

111. The SANTANA DEFENDANTS were or should have been aware of DONAHUE's infringements of GMAN's copyrights which were contributed to and induced by the SANTANA DEFENDANTS as more particularly described below.

**"ONLINE RETAIL DEFENDANTS"**

112. The ONLINE RETAIL DEFENDANTS in CHART TWO identified at Exhibits 39-41, 43, 45, 48, 50, 52, 55-79, and 83 are in the online retail sales business (while some also have brick and mortar retail stores) and respectively operate and maintain the primary business address, domains, and/or websites set opposite each of their names in CHART TWO for commercial and financial gain.

113. Each of the Defendants named in CHART TWO are the registrants, administrators, and/or technical operators of the domains and websites set opposite their respective names and identities, and in those capacities, each

of the named Defendants knew or should have known of the infringements on the domains, websites, and products sold through their respective online operations over which they exercised control. Accordingly, each Defendant is strictly liable for each of the infringements identified in connection with their respective business operations. Representative examples of the infringements of GMAN's works by the CHART TWO Defendants are attached in Exhibits "55" through "80", each Exhibit containing infringements by the named Defendant.

114. The exhibits in CHART TWO and attached to this Complaint are examples of the infringements caused by the identified Defendants associated with each respective exhibit and are not intended to be a comprehensive or complete listing of those infringements. GMAN will seek to amend this Complaint and his claims once additional infringements and/or Defendants are discovered.

115. Upon information and belief, GMAN alleges that none of the domains or websites identified in this Complaint are online service providers within the meaning of the DMCA and are not entitled to any protections or immunities under the DMCA.

116. The majority if not all of the pervasive infringements described in this Complaint and more particularly in CHART TWO, are a direct and proximate result of THE SANTANA DEFENDANTS  unauthorized copying, distribution, publication, and sale of GMAN's copyrighted works without which the works would not have been infringed; but for THE SANTANA DEFENDANTS' infringing and wrongful conduct as alleged, GMAN's works could and would not have been recopied, redistributed or republished by the ONLINE RETAIL DEFENDANTS below.

117. THE SANTANA DEFENDANTS wrongfully contributed to and induced the infringements of the ONLINE RETAIL DEFENDANTS by wrongfully asserting a right to sub-license the works over to the ONLINE RETAIL DEFENDANTS and/or copying, publishing, and distributing GMAN's copyrighted works and/or the digital files entrusted to them over to the ONLINE RETAIL DEFENDANTS for commercial and financial gain, the result of which was to cause the Defendants in CHART TWO to directly infringe GMAN's works themselves for their own respective illicit commercial and financial gains.

118. CHART TWO is representative of the infringements directly and proximately caused by THE SANTANA DEFENDANTS and not a comprehensive listing. The Exhibits referenced in CHART TWO contain examples of current and past infringements.

## CHART TWO ONLINE RETAIL DEFENDANTS

| URL | Owner/Operator | © Registrations Infringed | Ex# |
|---|---|---|---|
| www.santana.com | SANTANA DEFENDANTS, DONAHUE | Mirror Abraxas, Super Abraxas, Hand drawn Abraxas | 57 |
| www.carlossantanahats.com | DONAHUE | New Lion, Hand Drawn Abaxas | 66 |
| www.santanaorganicfoods.com | STEVEN VRIONIS, SANTANA DEFENDANTS | Mango Salsa Display 32oz | 83 |
| www.santanasalsa.com | STEVEN VRIONIS, SANTANA DEFENDANTS | Mango Salsa Display 32oz | 83 |
| www.hifi247.com | HI FIDELITY ENTERTAINMENT, DeBISSCHOP | Mirror Abraxas, Hand drawn Abraxas, Los | 55 |

| | | | |
|---|---|---|---|
| | | Dove, New Lion, SSB Blue, SOCC Men's, Super Abraxas, Universal, Taste of Chicago | |
| www.11345.com | HI FIDELITY ENTERTAINMENT, DeBISSCHOP | All That I Am Men's, SOCC Men's / Women's, Los Dove, Sunburst, Mirror Abraxas, Super Abraxas, Hand drawn Abraxas, New Lion | 56 |
| www.salvadorsantana.com | SALVADOR SANTANA | SS Yellow, SS Blue, SSB Logo | 43, 55 |
| www.allposters.com | ART.COM, Inc. a Delaware Corp., located at 2100 Powell Street, Emeryville, Ca. 94608 | S.O.C.C Men's; New Lion, Mirror Abraxas | 59 |
| www.bandtees.com | CASEY CUTSAIL, BAND TEES APPAREL, 124 Birkhead St., Asheboro, NC., 27203 | Mirror Abraxas | 60 |
| www.beltoutlet.com | PERFECT PRIVACY, LLC , 12808 Gran Bay Parkway West, Jacksonville, FL. 32258 | New Lion | 61 |
| www.cbrands.com | CONSTELLATON | SOCC Men's | 62, 85 |
| www.casanoble.com | CASA NOBLE, CONSTELLATION | SOCC Men's | 63, 84 |
| www.dadshats.com | DADSHATS.COM | New Lion, Hand Drawn | 64 |

| | | Abaxas | |
|---|---|---|---|
| www.dorfman-pacific.com | DORFMAN-PACIFIC, SHAWN DANIEL, 49 Stevenson St., Suite 1075, San Francisco, CA., 94105 | New Lion, Hand Drawn Abaxas | 65 |
| www.fedoras.com | DOUBLE O, LLC, WILL OAKLEY | New Lion, Hand Drawn Abaxas | 67 |
| www.hartfordyork.com | HARTFORD YORK, STEVE SINGER, 2617 Boeing Way, Stockton, Ca., 95206 | New Lion, Hand Drawn Abaxas | 68 |
| www.hats.com | HATS.COM, LLC, P.O. Box 194, Denver, PA., 17517 | New Lion, Hand Drawn Abaxas | 69 |
| www.menshats.com | SHAWN DANIEL, 2615 Boeing Way, Stockton, Ca., 95206 | New Lion, Hand Drawn Abaxas | 70 |
| www.oldglory.com | GLEN MORELLI, GFM LICENSING GROUP, 47 Industrial Park Road, Centerbrook, Conn. 06409 | Mirror Abraxas | 71 |
| www.rakuten.com | RAKUTEN, INC., Rakuten Crimson House, 1-14-1 Tamagawa, Setagaya-Ku, Tokyo, 158-0094, Japan | New Lion | 72 |
| www.rock.com | NCC GROUP ESCROW ASSOCIATES, LLC, 123 Mission Street, Suite 1020, S.F., Ca., 94105-5126 | MIRROR ABRAXAS, NEW LION, SOCC Men's | 73 |
| www.rockabilia.com | DOE #4 c/o  Domains | Mirror Abraxas, | 74 |

| | By Proxy, LLC 14747 N Northlight Blvd., Suite 111 PNB 309, Scottsdale, AZ. 85260 | New Lion, SOCC Men's | |
|---|---|---|---|
| www.santanatequila.com | CONSTELLATION | SOCC Men's | 75 |
| www.tshirtsubway.com | JOHN JEFFERS, T Shirt Subway Ltd. | Mirror Abraxas, New Lion | 76 |
| www.villagehatshop.com | FRED BELINSKY, BEL-BORN MANAGEMENT CORP., 3443 India St., S.D., Ca., 92103 | New Lion, Hand Drawn Abaxas | 77 |
| www.walmart.com | Wal-Mart Stores, Inc., 702 W.W., 8th Street, Bentonville, AR 72716 | Mirror Abraxas, New Lion, SOCC Men's | 78 |
| www.wanelo.com | KONSTANTIN GREDESLOUL, WANELO, INC., Gandi-63-65 Blvd. Massena, Gandi-Paris, FR 75013 | Mirror Abraxas, New Lion | 79 |

119. Upon information and belief, the SANTANA DEFENDANTS had sufficient control over the infringing activities of the above ONLINE RETAIL DEFENDANTS to have avoided and/or prevented the infringing activity.

120. THE SANTANA DEFENDANTS induced and encouraged the direct infringements attributed to them as described in this Complaint for commercial and financial gain.

121. Upon information and belief, GMAN alleges that THE SANTANA DEFENDANTS intentionally and knowingly declined to exercise their right to stop or limit the pervasive infringements they caused believing the ultimate cost and liability resulting from the infringing conduct would be

less than the profits derived from the infringing activities they directly and/or indirectly caused.

122. GMAN has not yet identified all the actual owners and operators of the infringing domains and websites and so identifies them as DOE 21-30.

**FACTS COMMON TO ALL CLAIMS**

123. Defendants knew the infringed works belonged to GMAN and that they did not have permission to exploit GMAN's works.

124. Each of the Defendants' distributed GMAN's works by and through their domains, websites, merchandising materials, and products bearing the infringements sold through those websites for commercial and financial gain.

125. Each Defendant acted with the knowledge that their acts as alleged constituted copyright infringement.

126. In the alternative, all Defendants should have known that their acts constituted copyright infringement.

127. Each infringement constitutes a separate and distinct act of infringement.

128. Each separate infringement of each work had independent economic value to the Defendant causing, contributing to, or inducing the infringement.

129. Each Defendant's conduct was willful within the meaning of the Copyright Act.

130. As a result of their wrongful conduct, Defendants are each liable to GMAN for copyright infringement pursuant to 17 U.S.C. § 501 et seq.

131. Defendants acted deliberately to injure GMAN and otherwise in conscious disregard of GMAN's rights.

132. Defendants performed these acts, or otherwise authorized, ratified or had knowledge of them and thereby acted in conscious disregard of GMAN's rights.

133. GMAN has suffered, and will continue to suffer substantial losses, including but not limited to damage to his business reputation and goodwill.

134. GMAN recently discovered these infringements as a result of an investigation he initiated in or about 2015 into the unauthorized uses of his works after receiving an unanticipated demand from THE SANTANA DEFENDANTS and/or SANTANA MANAGEMENT to assign his copyright to all of his past, current, and future works that GMAN might ever create for THE SANTANA DEFENDANTS and/or SANTANA MANAGEMENT or their licensees over to THE SANTANA DEFENDANTS.

135. In response to THE SANTANA DEFENDANTS' demand as described above, GMAN flatly refused.

136. GMAN has not assigned his copyright for any of the works identified in this Complaint to any person or entity.

137. To the extent GMAN created any work or works at any particular Defendant's request and personally handed the work or works over to any of the Defendants or their respective agents intending the works to be copied or distributed by the intended recipient, the scope and use of any license accompanying each work was always limited to a specific defendant, to a limited duration, limited audience, and limited commercial purpose; to the extent any license by GMAN was granted it never included the right to make any derivative works or to sublicense the work to any other persons or entities to recopy, redistribute, make derivative works, or sub-license for any commercial purpose.

GMAN v. Santana, et al.– COMPLAINT - Page 33

138. To the extent GMAN created any work or works at any Defendant's request and personally handed them over to any of the Defendants or their agents for evaluation or review purposes, GMAN did not grant any license whatsoever to any person or entity for any commercial use of any kind; further, GMAN did not intend and in fact did not authorize the recipient of the work or its agent to copy, distribute, make derivative works of any kind, or sub-license the work for any commercial purpose.

139. GMAN did not authorize anyone to issue or grant any license of any kind on his behalf to any person or entity at any time with regards to the works identified in this Complaint.

140. To the extent a valid, lawful and enforceable writing may exist between GMAN and any of the Defendants describing an authorized limited scope and use for any of the works identified in this Complaint, the relevant parties intended the license and associated use of that work to be narrowly circumscribed to the express purpose or description stated in the writing identifying the work and/or as described by the words describing any event included in the work itself; and, unless in writing to the contrary, the license was for a non-exclusive limited use and scope personal to the person or entity specifically identified in the writing and did not include a right to sub-license the work to any other person or entity or to make derivative works of any kind.

141. To the extent any writing described above is not personally signed by GMAN, the parties to that writing intended any description of the scope and use of the license suggested by the writing to be construed as narrowly as possible; or, in the alternative, to be construed, at GMAN's sole and absolute discretion, consistent with GMAN's subjective intent with regard to the scope and use authorized.

142. At all relevant times, GMAN was a self-employed independent contractor and an employee of no one.

143. GMAN did not enter into a work-for-hire agreement with any of the Defendants at any time with regard to any of the works of art identified and described in this Complaint.

144. The infringements alleged in this Complaint would not have occurred but for the SANTANA DEFENDANTS being the originating source of same and these Defendants' knowing, reckless, and/or wanton disregard of GMAN's rights.

145. DOE 1-100 are referred to collectively as "Doe Defendants". The true names and capacities, whether individual, corporate, associate, agents, or otherwise, of Defendants sued herein as DOE 1-100, are unknown to GMAN, who sues said Defendants by such fictitious names. If necessary, GMAN will seek leave of court to amend this Complaint to state Doe Defendants true names and capacitates when ascertained. GMAN is informed and believes and based thereon alleges that the Doe Defendants should also be subject to the relief requested herein.

146. All Defendants knew or should have known that GMAN's principle place of business was in California and that infringement of his works was likely to cause harm in California

147. Defendants' actions have caused and will continue to cause irreparable damage to GMAN for which GMAN has no remedy at law. Unless Defendants are restrained by this Court from continuing their infringements of GMAN's copyrights in his works, these injuries will continue to occur in the future. Accordingly, GMAN is entitled to injunctive relief restraining Defendants from further infringement.

148. All images, likeness and/or photos of SANTANA, and use of the word and/or phrase 'SANTANA', were incorporated in the works containing same by permission and/or at the request of SANTANA and/or his authorized agents.

### FIRST CAUSE OF ACTION
(Copyright Infringement – 17 U.S.C. §501)
**GMAN v. SANTANA, SANTANA TESORO, LLC, UNIVERSAL TONE MANAGEMENT, INC., CRISTILIANO, INC., MICHAEL VRIONIS, SALVADOR SANTANA, SERVICE FIRST, LINTON HALL, DONAHUE FITZGERALD, CASA NOBLE, CONSTELLATION BRANDS and ONLINE RETAIL DEFENDANTS**

149. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 148, inclusive.

150. As alleged above, GMAN owns Federally Registered Copyrights of Various Creative Works at the Registration and Application Numbers in CHART ONE.

151. At all relevant times, GMAN was the author and owner of the art and designs copied, reproduced, distributed, pirated, sold and publicly displayed by Defendants and their agents through their respective online websites and as copied and applied by Defendants' to their various respective wholesale and retail products and marketing materials as described herein.

152. GMAN has not assigned any of the above copyrights to any of the Defendants or to any other person or entity.

153. GMAN, THE SANTANA DEFENDANTS, SALVADOR SANTANA, SERVICE FIRST and HALL understood, consistent with the standard in the industry and their past custom and practice, that GMAN's delivery of his

creative art and branding concepts, designs, and works were to be held strictly confidential by these Defendants when the digital files were entrusted to them, that defendants would not copy, publish, distribute, or exploit GMAN'S ideas, concepts, and art without attribution and obtaining GMAN's express consent, that any use of GMAN's branding, concepts, and art would be strictly limited to the scope and use expressly authorized by GMAN, and that by accepting GMAN's disclosures and delivery of his works, Defendants agreed to abide by the foregoing terms unless other agreements to the contrary were made and memorialized in writing.

**"LOS DOVE & LOTUS" APPLICATION/REGISTRATION**

154. GMAN is the copyright holder of work and/or works bearing the U.S. Copyright Office assigned application number 1-486761741_Application_20160826_151635 and titled LOS DOVE & LOTUS. Exhibit "1". All references to "Applications" are to the Applications and associated numbers assigned by the U.S. Copyright Office to GMAN's works.

155. The copyright to this work is exclusively and solely owned by GMAN and has not been sold, assigned or conveyed to anyone for any commercial purpose.

156. In or about 2006, GMAN granted SANTANA MANAGEMET a limited scope and use license to copy this work on female T-Shirts to be distributed only in connection with the promotion of, and only for the duration of, the SANTANA concert tour for which this work was specifically created.

157. The limited license described above, was granted only to SANTANA MANAGEMENT, and did not include any license to create any derivative copies, or to distribute copies of the original or any derivative works of the

Los Dove & Lotus work to any third parties for any third party commercial and financial gain, and did not authorize any third parties to recopy, redistribute, or make derivative works of same.

158. THE SANTANA DEFENDANTS infringed GMAN's copyright in this work by distributing unauthorized copies of this work to third party wholesalers and retailers who re-copied, re-distributed, re-published, and made unauthorized derivative works of the art for direct commercial and financial gain for themselves and THE SANTANA DEFENDANTS.

159. For example, by way of explanation and not limitation, DEFENDANTS HIFI and DeBISSCHOP infringed GMAN's copyright as a result of THE SANTANA DEFENDANTS' unauthorized conduct described above. Examples of the infringements are described in CHART TWO with copies of same attached in Exhibits "55" and "56".

160. The SANTANA DEFENDANTS contributed to and induced DEFENDANTS HIFI, DeBISSCHOP and DOE 31-40 infringements of this work making THE SANTANA DEFENDANTS directly and/or indirectly liable for said infringements.

161. But for THE SANTANA DEFENDANTS copying and distributing of GMAN's digital files of the LOS DOVE & LOUTS work and/or products bearing that work to DEFENDANTS HIFI and DeBISSCHOP, DEFENDANTS HIFI, DeBISSCHOP and DOE 31-40 would not have been able to infringe this copyrighted work.

**"MIRROR ABAXAS" and "MIRROR ABRAXAS COLLECTION" REGISTRATION**

162. GMAN is the copyright holder of the unpublished works assigned Application numbers 1-

GMAN v. Santana, et al.– COMPLAINT - Page 38

4111476717_Application_20161114_160002 and 1-3489473451_Application_20160913_133126 and titled, respectively, "MIRROR ABRAXAS" and "MIRROR ABRAXAS COLLECTION". Exhibits "2A" and "2B".

163. GMAN did not authorize the publication, copying, distribution, sale or the creation of derivative works of either of the above copyrights at any time by any person or entity.

164. The above copyrights are unpublished within the meaning of the U.S. Copyright Act.

165. The above copyrights are exclusively and solely owned by GMAN and have not been sold, assigned, conveyed or licensed to anyone for any purpose.

166. On or about 2009, Mr. DeSerpa sent GMAN some artistic images created by an unknown third party artist and asked GMAN to consider the images and give Mr. DeSerpa his opinion regarding the quality and other characteristics of same.

167. In response, GMAN created the unique MIRROR ABRAXAS and MIRROR ABRAXAS COLLECTION and submitted same "on spec" to Mr. DeSerpa and SANTANA MANGEMENT for evaluation purposes only.

168. The MIRROR ABRAXAS is an original transformative work of art which GMAN created and submitted to SANTANA MANAGEMENT as a collection in a variety of contrasting colors, collected together and titled the "MIRROR ABRAXAS COLLECTION".

169. GMAN did not submit and SANTANA MANAGEMENT did not accept or receive the MIRROR ABRAXAS or the MIRROR ABRAXAS COLLECTION with the intent to copy, distribute, make derivative works, sub-license, or use for any commercial purpose of any kind; further,

SANTANA MANAGEMENT did not pay GMAN for any use of the MIRROR ABRAXAS or the MIRROR ABRAXAS COLLECTION.

170. Shortly after their receipt of the collection, SANTANA MANAGEMENT, expressly represented to GMAN that they had no interest in using his original collection of works, or any part of it and so paid GMAN only for the opportunity to review and evaluate the works but did not pay for any license or copyright for any use of the works for commercial or financial gain of any kind or to otherwise own and retain the works for themselves for any purpose.

171. SANTANA MANAGEMENT's representations as described above were knowingly false, misleading, and in bad faith at the time SANTANA MANAGEMENT made them.

172. Contrary to their false representations, SANTANA MANAGEMENT considered GMAN's ideas and design so original, creative, transformative and commercially viable, that they intentionally and knowingly pirated and infringed his copyright in these works by copying, distributing, publishing, and making unauthorized derivative works of same, and inducing other third parties to recopy, redistribute, and make unauthorized derivative works of same without GMAN's knowledge, authorization, or consent and did so for their respective commercial and financial gain.

173. THE SANTANA DEFENDANTS infringed the MIRROR ABRAXAS and MIRROR ABRAXAS COLLECTION by distributing unauthorized digital and/or printed copies of these unpublished works to as many entities as efficiently as possible by delivering the entrusted digital files, copies products of same to THE ONLINE RETAIL DEFENDANTS identified in CHART TWO thereby enabling them to recopy, redistribute and make unauthorized derivative works. Infringements of these works is identified by

each Defendant's domain in CHART TWO and attached in Exhibits "55" – "57", "60", "71", "73", "74", "78" and "79".

174. DONAHUE is the registrant organization, administrator and technical operator for the www.santana.com domain and website which claims to be SANTANA's officially "licensed" online and merchandising website for SANTANA and his entities' merchandise, products, and the marketing of SANTANA's commercial interests and ventures.

175. By virtue of its ownership, administration, and technical oversight of www.santana.com, DONAHUE, along with THE SANTANA DEFENDANTS, jointly control and operate this website for joint commercial and financial gain.

176. The www.santana.com website also bears a copyright statement in the names of DEFENDANTS SANTANA MANAGEMENT and HI FI. Exhibit "49".

177. Upon information and belief, GMAN alleges that the www.santana.com website is or was linked to www.hifi247.com and previously linked to www.11345.com, which, as alleged, are / were owned and operated by DEENDANTS HIFI and DeBISSCHOP and also self-described as official licensing entities for SANTANA.

178. Upon information and belief, GMAN alleges that by their knowing and purposeful association, ownership, management, and supervisory control over the domain and website at www.santana.com, and the advertising, images and products copied and distributed via that website, THE SANTANA DEFENDANTS, HIFI, DeBISSCHOP and DONAHUE each intended to associate the above domain name and website with SANTANA's musical persona to leverage his commercial marketing value and infringed GMAN's copyrights by copying and distributing same on the

GMAN v. Santana, et al.– COMPLAINT - Page 41

above websites and products sold through those websites for their joint and several direct and indirect commercial and financial gain.

179. But for THE SANTANA DEFENDANTS' copying and distributing of GMAN's digital files of the MIRROR ABRAXAS and the MIRROR ABRAXAS COLLECTION, the ONLINE RETAIL DEFENDANTS, DONAHUE, HIFI and DeBISSCHOP would not have been able to recopy, redistribute, or make unauthorized derivative works of these works.

180. The SANTANA DEFENDANTS contributed to and induced the ONLINE RETAIL DEFENDANTS, DONAHUE, HI FI and DeBISSCHOP's infringements of the MIRROR ABRAXAS and THE MIRROR ABRAXAS COLLECTION for commercial and financial gain so they are directly and/or indirectly liable for the infringements of all third parties that have so infringed.

**"HAND DRAWN ABRAXAS ANGEL" REGISTRATION**

181. GMAN is the copyright holder of the work bearing U.S. Copyright Application number 1-4111476691_Application_20161114_154458  titled the "HAND DRAWN ABRAXIS ANGEL". Exhibit "3A".

182. The HAND DRAWN ABRAXIS ANGEL copyright is exclusively and solely owned by GMAN and has not been sold, assigned, or conveyed to anyone.

183. GMAN presented this work to SANTANA MANAGEMENT for evaluation purposes at first, and then a final version with no intention or agreement that the work be copied or distributed by THE SANTANA DEFENDANTS or any other person or entity for any commercial purpose.

184. GMAN did not grant SANTANA MANAGEMENT or any other person or entity any right to copy, distribute, publish, sell or make derivative copies of this work or to sublicense or recopy or redistribute any copies or derivative works.

185. THE SANTANA DEFENDANTS, HIFI, and DeBISSCHOP willfully infringed GMAN's HAND DRAWN ABRAXAS ANGEL by knowingly copying, distributing, publishing, selling, and printing unauthorized derivative copies of this work on drums, t-shirts, and guitars copied, distributed, and sold via the www.santana.com and www.hifi247.com websites for their respective commercial and financial gain, and in connection with their respective commercial products. Representative examples of the infringements and contributory infringements of the HAND DRAWN ABRAXAS ANGEL appear at www.hifi247.com and www.santana.com. Exhibits "57" and "89".

186. SANTANA, THE SANTANA DEFENDANTS, DORFMAN-PACIFIC and HARTFORD YORK infringed the HAND DRAWN ABRAXAS ANGEL by copying and/or distributing same on hat boxes containing SANTANA's hats.

187. But for THE SANTANA DEFENDANTS' unauthorized copying and distribution of GMAN's digital files of the HAND DRAWN ABRAXAS ANGEL work and/or products bearing that work the infringements complained of could not have occurred.

188. The SANTANA DEFENDANTS substantially contributed to and induced DONAHUE, HIFI and DeBISSCHOP, and other ONLINE RETAIL DEFENDANTS' infringements of this work as described above and identified in CHART TWO and so are directly and/or indirectly liable for the infringements described.

**"SUPER ABRAXAS FINAL" REGISTRATION**

189. GMAN is the copyright holder of the work assigned U.S. Copyright Application number 1-3489473355_Application_20160913-133738 titled the "SUPER ABRAXIS FINAL". Exhibit "3B".

190. The SUPER ABRAXAS FINAL copyright is exclusively and solely owned by GMAN and has not been sold, assigned, or conveyed to anyone.

191. GMAN created this original work by selecting, coordinating, and arranging portions of works created by unknown artists, remastering same, and then arranging those remastered components along with original elements to create a unique and transformative expression of artistic design.

192. At the time GMAN was engaged to create this work, SANTANA MANAGEMENT represented that it had a limited budget and intended to use this work for a singular limited purpose, a "backstage pass" to be used in connection with a specific musical tour for which this work was created and only for the duration of that tour.

193. Accordingly, GMAN granted SANTANA MANAGEMENT a limited scope and use license to use this work solely as a backstage pass to be provided by it during SANTANA's concert tour to an exclusive limited group of individuals, a select group of concert goers, roadies, groupies, and others with them or the band, and not the public at large.

194. GMAN did not authorize anyone to use the backstage pass for any other commercial purpose of any kind including no right to copy, distribute, publish or sell copies of the work to the public at large, to make derivative works, or to sublicense, copy and distribute to any third parties to recopy, redistribute, republish, resell or make derivative works for commercial or financial gain at any time.

195. THE SANTANA DEFENDANTS, DONAHUE, HIFI and DeBISSCHOP intentionally and knowingly infringed GMAN's SUPER ABRAXS FINAL by knowingly copying, distributing, publishing, selling, and printing unauthorized copies and derivative copies of this work on drums, t-shirts, and guitars copied, distributed, and sold via the www.santana.com and www.hifi247.com domains and websites for their respective commercial and financial gain. Representative examples of the direct, contributory, and induced infringements of the SUPER ABRAXAS FINAL appear at www.hifi247.com and www.santana.com. Exhibits "55" and "57".

196. The SANTANA DEFENDANTS substantially contributed to and induced DONAHUE, HIFI and DeBISSCHOP, and other ONLINE RETAIL DEFENDANTS' infringements of this work as described in this Complaint and Exhibits and so are directly and/or indirectly liable for the infringements described.

197. But for THE SANTANA DEFENDANTS unauthorized copying and distribution of GMAN's digital files of the SUPER ABRAXAS FINAL work and/or products bearing that work the infringements complained of could not have occurred.

**"S.O.C.C." MEN'S and WOMEN's REGISTRATION**

198. GMAN is the copyright holder of works bearing U.S. Copyright Application numbers 1-3489212544_Application_20160912_184423 and 1-3489212694_Application_20160912_184425 titled respectively, the S.O.C.C. Men's and S.O.C.C. Women's. Exhibits "4" and "5". ("S.O.C.C." refers to the "Sounds of Collective Consciousness" Tour).

199. These copyrights are exclusively and solely owned by GMAN and have not been sold, assigned, or conveyed to anyone.

GMAN v. Santana, et al.– COMPLAINT - Page 45

200. GMAN granted SANTANA MANAGEMENT a limited scope and use license to use these works on respectively, a men's and women's t-shirt for the S.O.C.C. concert tour limited to the duration of that tour and for no other purpose.

201. GMAN did not authorize UNIVERSAL, SANTANA or any of THE SANTANA DEFENDANTS to otherwise copy, distribute, publish, sell, create derivative works, or sub-license this copyrighted work to any other party for any purpose.

202. GMAN did not license any of THE SANTANA DEFENDANTS to sublicense any of the S.O.C.C. works to CASA NOBLE or CONSTELLATION BRANDS for any purpose; in particular, GMAN did not license SANTANA or THE SANTANA DEFENDANTS to make any derivative works of the S.O.C.C. Men's work, to use the work for any commercial purpose related to SANTANA's personal equity investment in CASA NOBLE or his position on its Board of Directors, or to sub-license the work or any derivative works to CASA NOBLE or CONSTELLATION BRANDS.

203. GMAN did not license or authorize any person or entity to sublicense the work to anyone for any purpose, or to make any derivative works of same for any purpose, or to use any of the S.O.C.C. works to merchandise, advertise, or promote any alcoholic products for their respective commercial purposes.

204. GMAN entrusted SANTANA MANAGEMENT with the final ".psd" files for these works in good faith prior to SANTANA's personal investment in CASA NOBLE.

205. GMAN had entrusted the high density S.O.C.C. ".psd" digital files to THE SANTANA DEFENDANTS so that they could provide them to their

printer for copying and distributing only within the scope and uses authorized by the limited license described above.

206. A ".psd" file is a digitally "layered" file which allows the printer to separate the color layers in the digital file to print the work in color. Color printing requires separate colors be printed independently and so requires the file to be separable into the several independent colors to be printed.

207. GMAN did not license or authorize the delivery of these files to CASA NOBLE or any other third party for any use of any kind by CASA NOBLE and did not learn of the unauthorized hijacking, copying, and distribution of the original work or unauthorized derivative works of same until preparation of this Complaint.

208. THE SANTANA DEFENDANTS reworked the .psd files or in the alternative made unauthorized copies of same and/or provided copies of same to CASA NOBLE and/or CONSTELLATION BRANDS and/or other unknown third parties and DOE 41-45 to create unauthorized derivative works from the .psd file for their own respective commercial and financial gain resulting in the infringements described below.

209. THE SANTANA DEFENDANTS and CASA NOBLE's knowingly pervasive infringements of the "S.O.C.C. Men's" work at Application 1-3489212544-Application-20160912_184423 was especially egregious because these Defendants: (a) knowingly and purposefully removed GMAN's handwritten name and copyright statement incorporated by GMAN directly into the original .psd file entrusted to them, (b) knowingly and purposefully hijacked portions of that original work by cutting out GMAN's hand drawn image of SANTANA including the original "angel" wings created by GMAN and attached by him to the likeness of SANTANA, and then (c) knowingly and purposefully separated the hijacked cutout

described above from the original art resulting in the unauthorized derivative work which they then copied and distributed to merchandise and market the sale of their alcoholic product for commercial and financial gain.

210. SANTANA, having first obtained a personal equity investment in CASA NOBLE and appointed to the Board of Directors, pirated and/or directed others over whom he could and did exercise control to pirate GMAN's art in the manner described in the above paragraphs.

211. At all relevant times, SANTANA was aware of the commercial success that GMAN's art had created for SANTANA in the market; accordingly, SANTANA enabled, allowed, contributed to and/or induced the infringements described above for the express purpose of increasing the commercial and financial value of his investment in CASA NOBLE.

212. CONSTELLATION BRANDS, INC. acquired CASA NOBLE in or about 2014 and accordingly, is CASA NOBLE's successor in interest and as such, is liable for all infringements caused by CASA NOBLE prior to and subsequent to the acquisition date. Exhibit "47".

213. Subsequent to CONSTELLATION BRANDS acquisition of CASA NOBLE, CONSTELLATION BRANDS knew or should have known of the prior and continuing infringements, and is directly and/or vicariously liable for all infringements caused by SANTANA and/or committed by CASA NOBLE including the continued posting of this work on SANTANA's Facebook page for CONSTELLATION and CASA NOBLE's continuing commercial and financial gain.

214. Each of these Defendants thereby induced and/or substantially contributed to the others' knowing infringements of GMAN's S.O.C.C. Men's work for their joint and several commercial and financial gains.

215. SANTANA is vicariously liable for CASA NOBLE's infringements as described due to SANTANA's equity investment in CASA NOBLE, his participation and control exerted as a member of CASA NOBLE's Board of Directors, and his ability to have avoided the infringement at the outset and to have stopped and prevented any continuing infringements once they began.

216. CONSTELLATION BRANDS is liable for CASA NOBLE's infringements as CASA NOBLE's successor in interest and/or due to its wholesale acquisition of CASA NOBLE's operations, assets and liabilities.

217. Subsequent to its acquisition of CASA NOBLE, CONSTELLATION BRANDS itself recopied and redistributed the unauthorized derivative work for its own commercial and financial gain and thereby directly infringed GMAN's copyright in the S.O.C.C. Men's work without GMAN's knowledge or consent. Exhibit "47".

218. These Defendants knowingly pirated the derivative work and copied and distributed it on their promotional and marketing materials to enhance and popularize the sale of their tequila products via the national familiarity of SANTANA in the marketplace, all for commercial and financial gain. Exhibits "84"-"86" containing infringing images of this work on the merchandising and marketing materials and websites of these Defendants.

219. Many of the above acts of infringements by SANTANA, CASA NOBLE and CONSTELLATION BRANDS induced and/or substantially contributed to additional down-stream infringements when these Defendants recopied and redistributed the above described unauthorized derivative work to their third party retail accounts such as restaurants and bars to further increase and enhance the sale of their liquor products via the infringements of GMAN's works. Exhibits "84" – "86".

220. Collectively, these Defendants infringements of the S.O.C.C. Men's work included copying and distributing the unauthorized derivative work on posters, cards, advertising brochures, merchandising materials, T-Shirts, websites and videos for commercial marketing purposes.

221. Upon information and belief, GMAN alleges that SANTANA and CASA NOBLE owned, and/or operated and controlled a website at www.santanatequila.com for commercial and financial gain which contained infringements of GMAN's works, titled the "Casa Noble Blog"; the website was eventually assigned and/or transferred to CONSTELLATION who itself continues to maintain the infringements for its own commercial benefit.. Exhibit "45".

222. CONSTELLATION is also the owner, registrant, administrator and technical operator of the domain name and website at www.casanoble.com/entry.aspx , which is believed to have been assigned / transferred from SANTANA and/or CASA NOBLE over to CONSTELLATION and has and is believed to continue to infringe GMAN's works for its commercial and financial gain.

223. THE SANTANA DEFENDANTS directly infringed the S.O.C.C. Men's work in its original format by copying and distributing this work on a sticker, magnet, patch, SANTANA's fan Facebook page[1], and t-shirts sold and other products which it caused to be copied and distributed via third party websites. Exhibits "55", "56", "58", "59", "62", "63", "73"-"75", and "78".

---

[1] SANTANA operates a Facebook page at https://www.facebook.com/search/top/?q=carlos%20santana for his fan base for the specific purpose of enhancing his commercial and financial gain and promoting visual images of himself, products, and brand for commercial purposes. Exhibit "86".

GMAN v. Santana, et al.– COMPLAINT - Page 50

224. SANTANA, CASA NOBLE and/or CONSTELLATION BRANDS' removal of GMAN's copyright management information placed by GMAN into the original work was intended by these Defendants to, and in fact did, induce, enable, facilitate and conceal their respective copyright infringements of GMAN's S.O.C.C. Men's work in violation of the DMCA at 17 U.S.C. §1202 for which each Defendant is liable for their respective wrongful conduct and all applicable statutory damages.

225. But for THE SANTANA DEFENDANTS copying and distributing of GMAN's the S.O.C.C. Men's digital .psd file of and/or products bearing those works as alleged and/or unauthorized derivative work of same, neither CASA NOBLE, CONSTELLATION BRANDS, or any of the ONLINE RETAIL DEFENDANTS would have been able to infringe this copyrighted work.

226. Defendant ONLINE RETAIL DEFENDANTS identified in the attached Exhibits referenced in CHART TWO are directly liable for the infringements of the S.O.C.C. appearing on their domains and websites and/or copied and distributed by them. Exhibits "55", "56", "58", "59", "62", "63", "73"- "75", "78", "84" - "86".

227. The SANTANA DEFENDANTS substantially contributed to and induced the above ONLINE RETAIL DEFENDANTS' infringements of the S.O.C.C. works identified in the attached Exhibits for commercial and financial gain so that they are directly and/or indirectly liable for the infringements of all third parties that have so infringed.

**"UNIVERSAL TONE FEELMORE" REGISTRATION**

228. GMAN is the copyright holder of the work Application U.S. Copyright number 1-3489473204_Application_20160912_184429. Exhibit "6".

GMAN v. Santana, et al.– COMPLAINT - Page 51

229. This copyright is exclusively and solely owned by GMAN and has not been sold, assigned, or conveyed to anyone.

230. GMAN's work includes a background that reflects the painting by the artist Gustave Dore' Dante' the Empyrean from the Divine Comedy (1868), a work in the public domain. GMAN's copyrighted work contains original elements including the border, the sunburst exploding from the center, removal of significant original elements, and striking variations in design, color and densities from the original. Original Dore work of art in Exhibit "80".

231. GMAN granted "SANTANA MANAGEMENT" a limited scope and use license for the above work for the "Universal Tone Europe Tour 2010" for a t-shirt copied and distributed only in connection with the promotion of that tour for the duration of that tour; the license did not include any other rights to copy, distribute, publish, sell, create derivative works, or sub-license this copyright for any other commercial purpose.

232. THE SANTANA DEFENDANTS infringed GMAN's copyright by using the work on unauthorized products and wrongfully authorizing and inducing HIFI to recopy, redistribute, and sell the work without GMAN's knowledge or consent through HIFI's website. Exhibit "55".

233. But for THE SANTANA DEFENDANTS copying and distributing of GMAN's digital files of the UNIVERSAL TONE FELLMORE and/or products bearing those works, HI FI and DeBISSCHOP would not have been able to infringe this copyrighted work.

**"ALL THAT I AM" REGISTRATIONS**

234. GMAN is the copyright holder of works U.S. Copyright Application numbers: 1-3995388001_Application_20160915_172251, 1-

GMAN v. Santana, et al.– COMPLAINT - Page 52

3995388119_Application_20160915_172252, 1-3995388183_Application_20160915_172253, 1-3995467317_Application_20160915_172255, and 1-3995467453_Application_20160915_172256, titled respectively, "All That I am Aggregate Front", "All; that I Am Men's Front", "All That I am Women's Front", "All That I am Back South American Tour" and "All That I Am European Tour". Exhibits "7" – "11".

235. These copyrights are exclusively and solely owned by GMAN and have not been sold, assigned, or conveyed to anyone.

236. In or about 2006, SANTANA MANAGEMENT engaged GMAN to develop four original men's' designs and four original women's' designs for T-shirts for the limited purpose of merchandising those T-shirts in connection with and for the duration of the "All That I Am" Tour.

237. GMAN submitted the above works to SANTANA MANAGEMENT for evaluation purposes only.

238. After their initial review, SANTANA MANAGEMENT asked GMAN to rework the designs and create: (a) one for the limited use as a laminate for a backstage pass for the All That I Am Tour, and (b) two other designs, one for a woman's front and one for a men's front for T-shirt merchandising in connection with the All That I Am tour for the duration of the tour.

239. GMAN developed two backs for the T-shirts which listed, respectively, the European country locations and the South American region locations for the regions and locales for the concerts.

240. SANTANA MANAGEMENT wanted to be able to print T-Shirts that displayed the flags of the regions and locales on the front of the T-Shirts for each particular region and/or locale of that particular concert, and on the

back, either the European or South American Region listing of concerts from which the flags originated.

241. In good faith, GMAN delivered two master .psd files in a "seps" folder (one for the front that allowed the printer to include specific set flag colors pre-set by GMAN for the pre-determined region or locale concert location, and one for the back of the T-Shirt listing either the European or South American concert location associated with the flag) to SANTANA MANAGEMENT so they could provide their printer with two "channeled" files that would allow the printer to color separate out the respective country flag that was to be printed in combination with the correct leg of the tour.

242. As previously described, a ".psd" file is a digitally "layered" file which allows the printer to separate the color layers to print the work in color.

243. The .psd files did not contain any art that allowed for printing of any countries, regions, flags, or any other art except that which was specifically created and incorporated by GMAN into the final .psd files prior to delivery of those files to SANTANA MANAGEMENT.

244. GMAN did not authorize THE SANTANA DEFENDANTS to make any derivative works or copy, distribute, or publicly distribute any of the works for any purpose beyond that described above; in particular GMAN did not grant any authority for THE SANATANA DEFENDANTS to mix and match the works, or insert different elements, including any flags or colors of flags from countries that were not part of the original tour into his works.

245. GMAN did not authorize and THE SANTANA DEFENDANTS did not obtain a license for use of the works for any other commercial purpose than described above, or to sub-license the works to any third parties for any reason, or to make any derivative works.

246. THE SANTANA DEFENDANTS willfully infringed GMAN's copyright in these works by copying, distributing, publicly displaying, making derivative works, selling, and wrongfully contributing to the infringements of the ALL THAT I AM works by third parties, without any legal authority to do so and beyond the limited use and scope of the license right granted in connection with the All That I Am Tour. Exhibits "55", "56", "59", "71" and "73" attached hereto being representative examples of the infringements.

247. THE SANTANA DEFENDANTS provided unauthorized copies of these works and/or the .psd files to those third parties intending to wrongfully pirate GMAN's copyright in these works for these Defendants' commercial and financial gain.

248. But for THE SANTANA DEFENDANTS copying and distributing GMAN's digital files of the ALL THAT I AM WORKS and/or products bearing those works as described, the ONLINE RETAIL DEFENDANTS would not have been able to infringe these copyrighted works.

249. The ONLINE RETAIL DEFENDANTS identified in the exhibits referenced in CHART TWO associated with the ALL THAT I AM works, infringed these works on their respective domains and websites for commercial and financial gain and are separately liable for all such infringements.

**"SUNBURST" AND "DANCE TO THE BEAT OF MY DRUM" REGISTRATIONS**

250. GMAN is the copyright holder of works assigned U.S. Copyright Application numbers 1-3568650793_Application_20160915_172247, 1-3998335759_Application_20160915_172307, 1-3998335796_Application_20160915_172309, 1-

3998336007_Application_20160915_172310, and 1-3998336084_Application_20160915_172312, titled respectively "Santana Sunburst", "Dance To The Beat of My Drum Front", "Dance To The Beat of My Drum Back", "New Back 1a", and "New Back 2a". Exhibits "12" – "16".

251. The above copyrights are exclusively and solely owned by GMAN and have not been sold, assigned, or conveyed to anyone.

252. In 2005 or 2006, SANTANA MANAGEMENT asked GMAN to create art and a layout for evaluation purposes for posters to be used exclusively in connection with and for the duration of SANTANA's participation in the 40th MONTREUX Jazz Festival and to further GMAN's SUNBURST for the same limited duration in time.

253. GMAN developed and submitted two works, the SUNBURST and DANCE TO THE BEAT OF MY DRUMS, and limited the use of these works to copying and distributing the SUNBURST work on a poster only, and the DANCE TO THE BEAT OF MY DRUMS work on a T-Shirt.

254. GMAN did not authorize or license any other use of any kind for these works, including no right to copy, distribute, make derivative works, or sub-license the above works to any third party for any other purpose.

255. THE SANTANA DEFENDANTS infringed GMAN's copyrights by making unauthorized copies and derivative works, distributing same, and substantially contributing to the infringements by third parties such as HIFI by sub-licensing and/or providing copies to those third parties for re-copying, and redistributing for commercial and financial gain. Exhibit "81" being a representative example of such infringements.

256. But for THE SANTANA DEFENDANTS' copying and distributing of GMAN's digital files of the SUNBURST and DANCE TO THE BEAT OF

MY DRUM and/or products bearing those works as described, the ONLINE RETAIL DEFENDANTS would not have been able to infringe these copyrighted works.

257. The ONLINE RETAIL DEFENDANTS identified in the exhibits referenced in CHART TWO infringed these works on their respective domains and websites for commercial and financial gain and so are individually liable for said infringements. Exhibit "81".

**"THE NEW LION" REGISTRATION**

258. GMAN is the copyright holder of the works assigned U.S. Copyright Application numbers 1-3995467642_Application_20160915_172258, 1-3995467973_Application_20160915_172301, 1-3995467922_Application_20160915_172259 , 1-3995468083_Application_20160915_172302, and 1-3995468140_Application_20160915_172306 titled respectively "Lion Bandana Original 1fRev1 (LOS BANDANA)", "New Lion Bandana v2.2a 2013 revision", "LION BANDANA 1f 2006 Revision", "New Lion rev3a T-Shirt", and "New Lion with Stylized Border". Exhibits "17" through "21".

259. The above copyrights are exclusively and solely owned by GMAN and have not been sold, assigned, or conveyed to anyone.

260. SANTANA MANAGEMENT received limited scope and use licenses authorizing three of the above four works to be copied and distributed, and then limited the scope and use of the copying and distribution to the limited purposes described with regard to each work and for no other purpose of any kind.

261. SANTANA MANAGEMENT did not receive any license, right or authority to make any derivative work or sublicense any of these works to anyone for any commercial purpose.

### NEW LION CHART

| TITLE | LIMITED AUTHORIZED USE | |
|-------|------|------|
| Lion Bandana Original 1fRev1 (LOS BANDANA) | Head Bandana | 1-3995467642_Application_20160915_172258 |
| LION BANDANA 1f 2006 Revision | Head Bandana | 1-3995467922_Application_20160915_172259 |
| New Lion Bandana v2.2a 2013 revision | Head Bandana | 1-3995467973_Application_20160915_172301 |
| New Lion with Stylized Border | Sticker | 1-3995468140_Application_20160915_172306 |

262. Nearly every image of SANTANA marketed by SANTANA and his management team for commercial purposes bears his image and/or likeness with a stylized hat.

263. The limited license allowed SANTANA MANAGEMENT to copy and distribute the NEW LION on a Head Bandana in connection with a particular concert tour limited to the duration of that tour and did not include any rights to copy or distribute any copies after the termination of the concert tour, or any rights to sub-license the work to any person or entity or to make derivative works of any kind or any other commercial purpose.

264. Subsequent to the above limited scope and use license, GMAN licensed SANTANA MANAGEMENT to use each particular work in the above NEW LION CHART only for the specific uses identified in the chart, i.e., as a bandana and sticker only and for no other commercial purpose.

265. GMAN created the T-Shirt NEW LION design for evaluation purposes only, was not paid for the creation or any license for any use on a T-Shirt, and did not deliver the work to SANTANA MANAGEMENT intending or authorizing it to be copied and distributed on a T-Shirt.

266. The limited use license rights granted by GMAN did not include any rights for THE SANTANA DEFENDANTS to sub-license the work to any third parties for any purpose or any rights to make any derivative works of any kind by any person or entity.

267. THE SANTANA DEFENDANTS were able to easily pirate GMAN's NEW LION works, because GMAN sent THE SANTANA DEFENDANTS the final ".psd" files directly to THE SANTANA DEFENDANTS in good faith so that they could provide them to their printer for color separation for the above authorized uses only.

268. THE SANTANA DEFENDANTS infringed the NEW LION works by copying and distributing the original work and/or .psd file and unauthorized derivative works for unauthorized uses and purposes for their commercial and financial gain.

269. THE SANTANA DEFENDANTS infringed this work by creating unauthorized derivative works by removing layers and artistic components from the original digital files, modifying colors, and then applying the derivative works to their marketing and promotional materials and/or other retail and wholesale products without GMAN's knowledge or consent for these Defendants' illicit commercial and financial gain. Exhibits "55", "59", "71", and "90".

270. Upon information and belief, GMAN alleges that at all relevant times, DONAHUE was the owner, registrant organization, registrant, administrator, and technical controller of the domain and website at

www.carlossantanahats.com; however, GMAN does not at this time know the names and identities of any other owners or operators of the website, and so identifies them as DOE 46-55. Exhibit "52" is a true and correct copy of the public whois record identifying DONAHUE representing that it has adopted the above titles and associated legal capacities of the above domain name and website.

271. The www.carlossantanhats.com site specifically states that it is an "officially licensed site" which, upon information and belief, GMAN alleges DONAHUE operates for direct and/or indirect commercial and financial gain. Exhibit "68".

272. As the owner in control of the content posted at the www.carlossantanahats.com and www.santana.com domains and websites and the products sold through them, DONAHUE is liable for the infringements of GMAN's works that were copied, distributed and published on those websites, as well as the infringements caused by the unauthorized copying, distribution, and sale of products bearing the infringed works sold through those websites.

273. In the alternative, DONAHUE does not have any legal rights of ownership, technical or administrative oversight and control, with respect to or in the above two domain names or websites contrary to its express representations to the contrary declared by it to the domains' registrar and reported in the public WHO IS record; as such, DONAHUE should be deemed to be in violation of Uniform Domain Name Dispute Resolution Policy adopted by the ENOM Domain Name User Agreement for these domain names.

274. For purposes of determining relief pursuant to the Copyright Act at Section 504 et seq, in connection with the infringements at

http://www.santana.com and www.carlossantanahats.com, DONAHUE's infringements of GMAN'S works on the above websites and products distributed via those online retail sites should be deemed knowing and willfully committed as a result of DONAHUE's non-disclosure, failure to identify SANTANA, THE SANTANA DEFENDANTS, or any other third parties that may have otherwise been the owners, co-owners and/or operators of those websites, to the Registrars and public at large as required by the laws, rules and regulations applicable to domain name ownership and use.

275. For the foregoing reasons, DONAHUE is strictly liable for the infringements of GMAN's works as described above under the applicable regulatory scheme and laws that require accurate disclosure of the true identities of the owners, technical operators and administrative supervisors for domain names. *See* fn. 2.

276. As a result of DONAHUE's ownership, administrative control and technical oversight of the domains and websites at www.santana.com and www.carlossantanahats.com[2] for commercial and financial gain, and/or its

---

[2] The domains www.santana.com and www.carlossantanahats.com are registered by DONAHUE with Enom, Inc., making them subject to the Enom, Inc., Domain Name "Registration Agreement", as may have been amended from time to time. The Registration Agreement incorporates, in relevant part, the "Registrant Rights and Responsibilities" adopted by ICANN, which defines DONAHUE's legal duties as the Registrant. In relevant part, as the Registrant, DONAHUE was required to: (a) "provide certain current, complete and accurate information about you with respect to your Account information and with respect to the WHOIS information for your domain name(s)"; (b) represent that "no Services are being procured for … infringement of any intellectual property right or other right"; (c) "The Registered Name Holder must provide "accurate and reliable contact details" *and* must "promptly correct and update them" during the registration term. The details required are stated in Section 3.7.7.1.: "the full name, postal address, e-mail address, voice telephone number, and fax number if available of the Registered Name Holder; name of authorized person for contact purposes in the case a Registered Name Holder that is an organization, association, or corporation; and the data elements listed in Subsections 3.3.1.2, 3.3.1.7 and 3.3.1.8."; (d) "Registered Name Holders must represent that: "to the best of the Registered Name Holder's knowledge and belief, neither the registration of the

failure to comply with the applicable regulations described above, all
DONAHUE partners are strictly liable to GMAN for all damages sustained
by GMAN and/or DONAHUE's profits resulting from the infringements of
his works copied and distributed on and through the above domains and
websites.

277. SANTANA, THE SANTANA DEFENDANTS and DORFMAN-
PACIFIC directly infringed the NEW LION works by copying and
distributing same via their online 2015-2017 eCatalogs, hard copies of same,
and the hats, boxes and merchandising and marketing materials sold through
their catalogs and the above websites. Relevant pages of the Dorfman
/Santana eCatalogs are attached in Exhibits "65" and "82".

278. DEFENDANTS DONAHUE, DOE 56-60, SANTANA, and THE
SANTANA DEFENDANTS infringed GMAN's copyright in his NEW
LION making unauthorized derivative works of the NEW LION and then
copying and distributing the NEW LION works the derivative work on
numerous items of apparel; in particular, applying the works to hats and hat
boxes, which they then copied, distributed, sold via their websites and
through third party online and brick and mortar retail stores without any
lawful right. Representative examples of the infringements are attached in
Exhibit "66".

279. THE SANTANA DEFENDANTS contributed to and induced the
ONLINE RETAIL DEFENDANTS' infringements of GMAN's New Lion
copyright by copying, publishing and distributing the work on patches,
buttons, magnets, and jackets, making unauthorized derivative works, and by
distributing same to third party retailers to be recopied, redistributed and

Registered Name nor the manner in which it is directly or indirectly used infringes the legal
rights of any third party." Exhibit "51".

sold for commercial and financial gain. Exhibits "55", "61", "64" through "74", and "77" through "79", and "82".

280. The ONLINE RETAIL DEFENDANTS identified in the above exhibits are each separately liable for all infringements occurring on their respective websites and the products sold through them as identified in CHART TWO.

281. SANTANA, THE SANTANA DEFENDANTS and DORFMAN-PACIFIC are jointly and severally liable for all infringements, including the unauthorized derivative works of the NEW LION art, copied and distributed on the domains and websites at www.dorfman-pacific.com and at www.carlossantanahats.com as well as for all damages, profits, royalties and license fees they collected resulting from the infringements described herein.

282. The NEW LION work revision at Application number 1-3995468083_Application_20160915_172302, titled "New Lion rev3a T-Shirt" was created by GMAN to be licensed for use on a T-Shirt; concurrent with the delivery of the file, SANTANA MANAGEMENT declined to accept the file for any purpose and did not pay for any commercial use or license of any kind for this work.

283. As before, contrary to its misrepresentation that it had no intention of using this work for a commercial purpose, and knowing it had not paid for any use, THE SANTANA DEFENDANTS surreptitiously pirated this work and have recently made it the center of their marketing and promotional plan and activities for SANTANA's "Supernatural Tour" currently ongoing in Las Vegas, Nevada.

284. As with the S.O.C.C. Men's work, THE SANTANA DEFENDANTS and/or other as yet unidentified Defendants, DOE 61-65, pirated GMAN's NEW LION work, hijacked portions and components of the original work,

and without adding any components of original design, made unauthorized derivative works of GMAN's copyrighted work and copied and distributed same, and/or contributed to and induced DOE 61-65, to recopy and redistribute same, for their respective commercial and financial gain in connection with the ongoing SANTANA Supernatural Tour. Representative infringement examples by SANTANA, THE SANTANA DEFENDANTS, and DEFENDANTS HIFI and DeBISSCHOP attached in Exhibit "90".

285. GMAN did not discover the above Defendants' pervasive infringements of this work until late 2016.

286. The above Defendants are liable over to GMAN for all statutory damages and/or profits directly and/or indirectly derived by their respective wrongful use of the above described infringements.

**"TASTE OF CHICAGO" aka "Embrace Your Light Tour" APPLICATION/REGISTRATION**

287. GMAN is the copyright owner of the work assigned U.S. Copyright Application number 1-4061124631_Application_20161007-143437 and titled the "TASTE OF CHICAGO 2005". Exhibit "31".

288. The copyright to this work is exclusively and solely owned by GMAN and has not been sold, assigned or conveyed to anyone for any commercial purpose.

289. In or about 2005, GMAN licensed SANTANA MANAGEMENT to use this work as a poster to be copied, distributed, and sold to promote a particular concert tour for the duration of the tour.

290. THE SANTANA DEFENDANTS did not receive a license to create, copy or distribute any derivative works of this work or to copy or distribute any other images of this work on any product other than a poster.

291. GMAN did not grant a license to THE SANTANA DEFENDANTS or any other person or entity to sub-license or authorize any other third parties any rights to sub-license, copy, distribute, make derivative works, or re-copy or re-distribute this work for any purpose.

292. THE SANTANA DEFENDANTS infringed GMAN's registration by distributing unauthorized copies of this work to third party retailers who re-copied, re-distributed, re-published, and made derivative works of the art for direct commercial and financial gain thereby infringing GMAN's copyright.

293. DEFENDANTS HIFI and DeBISSCHOP infringed GMAN's copyright on numerous occasions. Representative examples of such infringements are attached in Exhibit "55".

294. The SANTANA DEFENDANTS substantially contributed to and induced DEFENDANTS HIFI and DeBISSCHOP for commercial and financial gain making THE SANTANA DEFENDANTS directly and/or indirectly liable for said infringements.

295. But for THE SANTANA DEFENDANTS copying and distributing of GMAN's digital files of the TASTE OF CHICAGO 2005 work and/or products bearing that work, DEFENDANTS HIFI and DeBISSCHOP would not have been able to infringe this copyrighted work.

**"SSB LOGO", "SS YELLOW" and "SS BLUE" REGISTRATIONs**

296. GMAN is the copyright holder of the works assigned U.S. Copyright Application numbers: 1-3978484351_Application_20160908_140707, 1-3489473380_Application_20160903_123852 and 1-3489473426_Application_20160903_123854, titled respectively "SSB LOGO", "SS YELLOW", "SS BLUE". Exhibits "22" – "24".

297. These copyrights are exclusively and solely owned by GMAN and have not been sold, assigned, or conveyed to anyone.

298. In approximately 2007, GMAN created and delivered the above works to SALVADOR SANTANA and SANTANA MANAGEMENT for evaluation purposes only.

299. GMAN did not deliver the above works intending or agreeing that the works could be copied or distributed for any commercial purpose.

300. Upon information and belief, SANTANA MANAGEMENT was acting as the agent for SALVADOR SANTANA in connection with the solicitation, evaluation, and subsequent unauthorized copying and distributions of these works for their own respective commercial and financial gain.

301. Without authorization or legal right for any use of the above works, SALVADOR and THE SANTANA DEFENDANTS brazenly copied, published, and distributed the works for their own personal commercial and financial gain on DEFENDANT SALVADOR's website and via other websites such as www.ebay.com, www.hifi247.com, www.11345.com, www.cduniverse.com, and www.discography.com. Representative examples of infringement of the above three works are attached in Exhibits "55" and "88".

302. DEFENDANTS HIFI and DeBISSCHOP infringed the above copyrights by copying and distributing, and/or recopying and redistributing the above works on their websites www.hifi247.com and www.11345.comm and products sold through them for commercial and financial gain.

**"MANGO SALSA DISPLAY", "ORGANIC FOODS WEBSITE BANNER", "MOLE SAUCE CARRIER TRAY", "SUPER PROMO CO-OP", "MANGO SALSA CARRIER TRAY", and "MANGO SALSA 32oz JAR LABEL"  REGISTRATIONS**

303. GMAN is the copyright holder of copyrights assigned U.C. Copyright Registration numbers: VA 1-968-849, VA 1-968-848, VA 1-968-846, VA 1-968-847, VA 1-968-844, and VA 1-968-850, titled respectively "Mango Salsa Display",  "Organic Foods Website Banner", "Mole Sauce Carrier Tray",  "Super Promo Co-Op", "Mango Salsa Carrier Tray", and "Mango Salsa 32oz Jar Label". Exhibits "25" - "30".

304. GMAN is the exclusive owner of these copyrights.

305. The above works are original works of art, and except for the exclusions for the likeness of SANTANA and the word 'SANTANA', all components of the works are unique and original creations of GMAN.

306. GMAN has not assigned, transferred or conveyed his copyrights in these works to person or entity.

307. In mid-2015, SERVICE FIRST asked GMAN to create some art for SERVICE FIRST to copy and distribute on SERVICE FIRST salsa jars and related products ("SALSA works") which SERVICE FIRST intended to sell for its own commercial and financial gain.

308. At all relevant times, SERVICE FIRST was the only entity authorized under the limited use license granted by GMAN to copy the SALSA works for any commercial purpose.

309. Neither SERVICE FIRST nor HALL received any authority to provide the SALSA works or digital files, or copies of the works to any third party for them to copy, distribute, or sub-license for their own commercial purpose except for printers for labels for SERVICE FIRST' product and the retail and wholesale outlets selling the actual salsa product.

310. GMAN did not authorize any person or entity to use the SALSA works or any component part of those works, or derivative works of same, as part of any trademark application or registration.

311. SERVICE FIRST and GMAN verbally agreed that SERVICE FIRST use of the SALSA works was conditioned on SERVICE FIRST's promise to pay GMAN for the use of the work, the failure of which would result in the revocation of the limited license to any continued use of the works.

312. In good faith, GMAN delivered the digital files of the works to SERVICE FIRST and HALL anticipating that he would be paid for the limited use license as agreed.

313. SERVICE FIRST failed to pay the consideration required for the limited use license granted by GMAN.

314. Despite receiving and then copying, distributing, and publishing the works on its labels to the public for its own commercial and financial gain, SERVICE FIRST and HALL have continued to fail and refuse to pay GMAN the amounts owed for the license despite GMAN's demands for payment.

315. Unpaid license fees are still owed to GMAN from SERVICE FIRST for its use of the SALSA works in connection with SERVICE FRIST.

316. Upon information and belief, GMAN alleges that at the time he was contacted by SERVICE FIRST and HALL, SERVICE FIRST had entered into a written agreement with TESORO which required SERVICE FIRST to obtain GMAN's copyrights to the SALSA works and assign them over to THE SANTANA DEFENDANTS and/or TESORO.

317. At all times relevant, SERVICE FIRST, HALL and THE SANTANA DEFENDANTS deliberately concealed and withheld SERVICE FIRST's promise to TESORO and/or THE SANTANA DEFENDANTS to obtain an

assignment of GMAN's SALSA works copyrights from GMAN and assign same over to THE SANTANA DEFENDANTS.

318. GMAN did not discover SERVICE FIRST's agreement described above until after SERVICE FIRST had approved the SALSA works, GMAN had delivered the SALSA works digital files to SERVICE FIRST who copied and distributed the works on SERVICE FIRST's products, and then, STEVEN VRIONIS,  UNIVERSAL and THE SANTANA DEFENDANTS infringed the SALSA works as described herein.

319. After the infringements described above occurred and were discovered by GMAN, SERVICE FIRST asked GMAN to assign his copyright to the SALSA works and in response, GMAN flatly refused and revoked the license issued to SERVICE FIRST as a result of SERVICE FIRST's failure to pay the license fee and discovering SERVICE FIRST's bad faith concealment of its obligation to THE SANTANA DEFENDANTS to obtain an assignment of GMAN's copyrights.

320. THE SANTANA DEFENDANTS then made a written demand to GMAN to assign his copyrights in the SALSA works and in all other past, present and future works of any kind that GMAN had created and may create in the future for THE SANTANA DEFENDANTS over to THE SANTANA DEFENDANTS.

321. In response to THE SANTANA DEFENDANTS' demand for copyright or other license rights, GMAN unequivocally refused.

322. THE SANTANA DEFENDANTS did not request, and GMAN did not grant or license THE SANTANA DEFENDANTS any right for any use of the SALSA works for any purpose of any kind at any time.

323. The domains and websites at http://santanaorganicfoods.com and http://www.santanasalsa.com are registered, owned, managed and controlled

GMAN v. Santana, et al.– COMPLAINT - Page 69

by STEVEN VRIONIS and UNIVERSAL for commercial and financial gain. Exhibit "38" being a copy of the official domain record identifying STEVEN VRIONIS as the Registrant, and UNIVERSAL as the Registrant company for the urls at http://www.santanaorganics.com and http://www.santanasalsa.com.

324. Accordingly, STEVEN VRIONIS and UNIVERSAL had exclusive control and authority over the use and content of these websites making STEVEN VRIONIS and UNIVERSAL, and UNIVERSAL's officers and directors, in particular, SANTANA and VRIONIS, strictly liable for all infringements of GMAN's copyrights of the SALSA works occurring on these websites.

325. Without authorization, SANTANA, TESORO, UNIVERSAL, VRIONIS, and STEVEN VRIONIS and DOE 61 - 65, copied and distributed GMAN's works titled "Mango Salsa 32 oz. jar label" (VA 1-968-850) and "Mango Salsa Display" (VA 1-968-849) by copying, distributing, and publishing these works on the above two websites for commercial and financial gain without any lawful right to do so. The above Registrations are attached in Exhibits "25" – "30". Representative examples of the infringements are attached in Exhibit "83".

326. TESORO wrongfully attempted to claim a copyright in GMAN's SALSA works it wrongfully copied and distributed at the www.santanasalsa.com website by attaching its own copyright to that website and failing to give due attribution to GMAN's authorship of the SALSA works displayed at that website.

327. The www.santanasalsa.com website refers the user via a hyperlink to the www.santana.com website for contact information; as alleged, DEFENDANT DONAHUE is the sole contact, owner, administrator and technical operator for the "officially licensed" www.santana.com website.

GMAN v. Santana, et al.– COMPLAINT - Page 70

328. GMAN did not license or authorize SERVICEFIRST or HALL to sub-license or deliver the SALSA works digital files to STEVEN VRIONIS, UNIVERSAL, any of THE SANTANA DEFENDANTS, DONAHUE, or any other person or entity to copy or distribute the SALSA works files or art for any commercial purpose.

329. Upon information and belief, GMAN alleges that all relevant times, DONAHUE and TESORO completed and submitted Trademark Application Serial Number 86979738 to the United States Patent & Trademark Office which resulted in the USPTO issuing Trademark Registration Number 5022677 identifying TESORO as the owner of the Trademark. Exhibits "53" and "54".

330. Upon information and belief, SANTANA personally authorized and consented to the above Trademark Application as submitted to the U.S.P.T.O.

331. Neither DONAHUE, SANTANA, TESORO, VRIONIS, any of THE SANTANA DEFENDANTS, SERVICE FIRST, HALL or DOE 66-70  had any lawful authority of any kind to create derivative works from GMAN's SALSA works, or to submit any of GMAN's SALSA works or derivative works of same to the U.S.P.T.O. for any purpose, including in particular, an application for a Trademark containing any of GMAN's works or any derivative works from same at any time. Copies of the infringed works copied and distributed by these Defendants to the U.S.P.T.O are attached in Exhibit "87" (Compare Exhibit "87" with GMAN's Copyright Registrations in Exhibits "25" to "30").[3]

---

[3] Subsequent to the original submission of the Trademark Application, these Defendants submitted and/or acted upon an application to divide the previous application / trademark (as late as approximately July, 2016), which continued to

332. The Trademark Application submitted to the U.S.P.T.O. by DONAHUE, TESORO, SANTANA and VRIONIS contained a knowingly inaccurate representation by asserting in the Application that TESORO had any lawful authority to use, copy, distribute, and/or incorporate any works or derivatives of GMAN's works into the Application.

333. At the time these Defendants incorporated GMAN's copyrighted works into the Trademark Application, these Defendants knew the SALSA works were created and exclusively owned by GMAN, the copyright had not been assigned to any person or entity, and that GMAN had not licensed any person or entity to use of these works or make derivative works from the SALSA works to be incorporated as part of a Trademark Application or Trademark Registration.

334. These Defendants knowingly and deliberately filed the Trademark Application asserting a right to use of GMAN's SALSA works knowing they lacked any legal right or authority to do so.

335. More particularly, DONAHUE, TESORO, VRIONIS and SANTANA knew they did not have copyright to GMAN's SALSA works at the time they incorporated same into the Trademark Application and the final Registration because: (a) they knew SERVICE FIRST could not and did not deliver the copyrights and/or any license rights at any time for use of these works as part of a Trademark Application or Registration; (b) these Defendants issued letters between April, 2015, and September, 2015, demanding assignment of the copyrights directly from GMAN before the Trademark Registration Date of August 16, 2016 confirming they knew they had no legal right to the use of these works for a Trademark Application or

wrongfully incorporate GMAN's Registrations despite knowing that GMAN had refused to assign his copyright to those works over to anyone.

GMAN v. Santana, et al.– COMPLAINT - Page 72

Registration; and (c) these Defendants knew prior to the Registration being issued from the U.S.P.T.O. that GMAN had unequivocally refused to assign, sell, convey or provide his copyright or any license for use of those works in a Trademark Application or Registration of any kind.

336. Accordingly, during the same time period in which GMAN was discovering the concealment of the SERVICE FIRST / SANTANA agreement described above, associated infringing uses of his copyrights, and refusing to assign his copyright or license to THE SANTANA DEFENDANTS for any purpose, DONAHUE, TESORO, SANTANA and VRIONIS were actively submitting and asserting the ownership and/or any lawful rights of the works of art created by GMAN (being the same works wrongfully copied by STEVEN VRIONIS and TESORO on the www.santanasalsa.com and www.santanaorganicfoods.com websites) as their own to the U.S.P.T.O. in furtherance of the Trademark Registration knowing their representations in the Trademark Application were inaccurate and no lawful right to the Registration existed.

337. During the above time period, these Defendants were advised to cease and desist from any further infringements of all of GMAN's works; the extent of which were not yet known to GMAN but were actually and/or should have been known to these Defendants.

338. Accordingly, DEFENDANTS TESORO and DONAHUEs' copying and distributing of GMAN's works into the Trademark Application and subsequently via the copying and distribution of the Registration bearing same constitute willful and direct copyright infringements by these Defendants.

339. DONAHUE ,TESORO  and DOE 66-70 owed a duty to GMAN to cancel or otherwise suspend prosecution of the offending Trademark Application,

and/or to cancel the Trademark Registration once issued because they knew or, with a minimum of diligent inquiry should have known, that neither they and/or TESORO had any lawful right of any kind to have submitted the Application in the first instance and no legal right to prosecute the Application or use the ultimate Registration incorporating GMAN's copyrights.

340. DONAHUE and TESORO knew that the Trademark would significantly affect GMAN's rights in his works, that the harm to GMAN was foreseeable since DONANHUE is an expert in the area of Intellectual Property law, that there was a direct and immediate connection between the issuance of the Trademark and the injury GMAN would suffer, that they did not have any legal right to continue to prosecute the Trademark Application or to maintain the Trademark once Registered utilizing GMAN's copyrighted works, and that the public policy of California and rules and regulations applicable to the legal profession required DONAHUE to rectify and correct its wrong once it knew of the injury, the inaccuracy of the representations made to the U.S.P.T.O. in the Trademark Application, and the infringements and violations of GMAN's rights they knowingly and willfully caused.

341. TESORO, DONAHUE, SANTANA, THE SANTANA DEFENDANTS and DOE 66-70 incorporation of GMAN's copyrighted works into the TESORO Trademark via the use of the United States Trademark Regulatory process was malicious, oppressive, and intended to defraud and in fact did defraud and deprive GMAN of his rights in and to his copyrighted works and right of attribution, which rights are superior to the rights TESORO wrongfully usurped via the Registration based on a knowingly inaccurate statement of right to use of the art incorporated into the Trademark Application by these Defendants.

GMAN v. Santana, et al.– COMPLAINT - Page 74

342. As alleged, DONAHUE, TESORO, VIRONIS, SANTANA and THE SANTANA DEFENDANTS copying of GMAN's works and/or unauthorized derivative works or components thereof into the Trademark Application and Registration are not legally protected acts because these Defendants knew they had no lawful right to copy the work into the publicly filed Trademark Application and accordingly, the copying of GMAN's works into the Trademark Application constitutes a willful and direct act of infringement of GMAN's copyright in his works.

343. TESORO, SANTANA, THE SANTANA DEFENDANTS, DONAHUE VRIONIS, and DOE 66-70 are strictly liable for all infringements of GMAN's works resulting from the issuance, use, copying and distribution of the above Trademark.

344. These Defendants' copying and distribution of the Registration constitutes willful and direct acts of infringements of GMAN's copyrights for the same reasons alleged above.

345. These Defendants' conduct in applying for and/or allowing the U.S.P.T.O to continue to act on the Application, issue the Registration, and/or in not canceling the Application or the Registration once issued, and the copying and distribution of the Mark on the websites of STEVEN VRIONIS and UNIVERSAL, and to other third parties, contributed to and induced the infringement of GMAN's works by all third parties and any other Defendants that copied and distributed, and/or recopied and redistributed the Trademark and all damages sustained thereby.

346. These Defendants and DOE 71-90 are strictly liable over to GMAN for contributing to and/or inducing all direct and indirect infringements caused by the copying and distribution of the Mark.

347. Defendants SERVICE FIRST and HALL cannot lawfully use or create a brand for their salsa and food products using the Trademark issued to TESORO by the U.S.P.T.O. as the Trademark was unlawfully obtained for the reasons alleged above.

348. Upon information and belief, GMAN alleges that Defendants SERVICE FIRST and HALL maliciously and surreptitiously delivered GMAN's digital files to the SALSA works to DONAHUE, TESORO, SANTANA, THE SANTANA DEFENDANTS, VRIONIS, UNIVERSAL, and/or STEVEN VRIONIS, for commercial and financial gain and in utter disregard of GMAN's rights knowing they had no lawful right or justification to do so.

349. These Defendant's respective and collective conduct in wrongfully distributing GMAN's digital files to his copyrighted works, applying for and prosecuting the Trademark Application, copying and distributing the Registration, and other direct and indirect copying of GMAN's SALSA works as described was malicious, oppressive, and so offensive and contrary to the equities of justice as to require an award of punitive damages as to each Defendant in light of the known and well established professional standards guiding their conduct and their respective areas of expertise within the legal and product licensing professions.

### SECOND CAUSE OF ACTION
### (Contributory Copyright Infringement)

### GMAN v. THE SANTANA DEFENDANTS and DONAHUE

350. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 349, inclusive.

GMAN v. Santana, et al.– COMPLAINT - Page 76

351. Numerous individuals and entities directly infringed GMAN copyrighted works as described above.

352. THE SANTANA DEFENDANTS materially and substantially contributed to all the infringements alleged in this Complaint by copying, distributing, publishing, and/or selling GMAN's works as described above without authority to the ONLINE RETAIL DEFENDANTS and other third party Defendants DOE 91-100.

353. But for the SANTANA DEFENDANTS wrongful and pervasive copying, distribution, and transmission of GMAN's works to the third party commercial entities, those entities could not have copied and distributed, oe recopied, redistributed, retransmitted and infringed GMAN's works for commercial purposes.

354. Upon information and belief, GMAN alleges that THE SANTANA DEFENDANTS and DONAHUE, jointly and severally, substantially contributed to and/or induced the infringement of GMAN's copyright to the works incorporated by these Defendants into the Trademark Application and Registration by copying and distributing same to third parties and/or enabling and encouraging third parties to recopy and redistribute the Trademark bearing the infringed works on those third party products for these Defendants direct and indirect commercial and financial gain.

**GMAN v. SERVICE FIRST and HALL**

355. Upon information and belief, GMAN alleges, that SERVICE FIRST and HALL maliciously and without any lawful right of any kind, copied, distributed, and transmitted the SALSA works to THE SANTANA DEFENDANTS, DONAHUE, and/or STEVEN VRIOINIS for SERVICE FIRST and HALL's commercial purposes thereby wrongfully inducing,

encouraging, and contributing to THE SANTANA DEFENDANTS, DONAHUE, and/or STEVEN VRIONIS' ability to incorporate those works into their respective websites and the above Trademark, and to otherwise recopy, redistribute, and retransmit the infringed works for their own commercial and financial gain.

356. As described, each defendant induced, caused and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others to reproduce and distribute GMAN's works as described above without GMAN's authority or consent.

357. Defendants each had knowledge of their own and the infringing acts of others of GMAN's copyrighted works.

## THIRD CAUSE OF ACTION
### (Vicarious Copyright Infringement)

358. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 357, inclusive.

359. Numerous individuals and entities directly infringed GMAN's copyrighted works.

360. Upon information and belief, GMAN alleges THE SANTANA DEFENDANTS, and in particular, SANTANA and VRIONIS ("VICARIOUS INDIVIDUAL DEFENDANTS"), had the right and ability to control the infringing acts of DEFENDANTS TESORO, UNIVERSAL, CRISTALINO, and GUTS & GRACE ("VICARIOUS ENTITY DEFENDANTS") (VICARIOUS INDIVIDUAL DEFENDANTS and VICARIOUS ENTITY DEFENDANTS are collectively referred to as the "VICARIOUS DEFENDANTS").

361. Upon information and belief, GMAN alleges the VICARIOUS INDIVIDUAL DEFENDANTS and the VICARIOUS ENTITY DEFENDANTS had the right and ability to control the infringing acts of third party infringers, DEEFENDANTS DONAHUE, HIFI, DeBISSCHOP, CASA NOBLE, CONSTELLATION BRANDS, and the other ONLINE RETAIL DEFENDANTS.

362. The VICARIOUS DEFENDANTS obtained a direct financial benefit from the infringing activities of the other individuals and entities identified in this Complaint, third party defendants who directly infringed GMAN's works.

363. The acts, omissions, and conduct of VICARIOUS DEFENDANTS, as alleged in this Complaint constitute vicarious copyright infringement.

364. As a direct and proximate result of the infringements by the VICARIOUS DEFENDANTS, GMAN is entitled to damages including all profits derived by THE SANTANA DEFENDANTS from said infringements.

365. The aforementioned acts of VICARIOUS DEFENDANTS were willful, oppressive, fraudulent and malicious and therefore, VICARIOUS DEFENDANTS' conduct justifies an award of exemplary or punitive damages in an amount sufficient to punish Defendants and to make examples of them to others as provided for in Cal. Civ. Code § 3344(a).

### FOURTH CAUSE OF ACTION
### (Inducing Copyright Infringement)

366. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 365, inclusive.

367. For the reasons alleged above, THE SANTANA DEFENDANTS, infringed GMAN's copyrights by intentionally inducing the ONLINE

RETAIL DEFENDANTS, CASA NOBLE, and CONSTELLATION BRANDS to infringe GMAN's copyrights as identified in CHART TWO.

368. THE SANTANA DEFENDANTS acts of infringement were willful, in disregard of and with reckless indifference to GMAN's rights.

369. SANTANA's inducement of the CASA NOBLE infringements resulted from his personal interest to increase the value of his equity ownership in CASA NOBLE by infringing the commercial and marketing value of GMAN's works.

370. In the alternative, THE SANTANA DEFENDANTS knew or should have known when they delivered GMAN's copyrighted works to the other named Defendants, that the Defendants receiving GMANS's works, and in particular, the .psd files, would infringe GMAN's copyrights.

371. As a direct and proximate result of the infringements by the SANTANA DEFENDANTS, GMAN is entitled to damages including all profits derived by THE SANTANA DEFENDANTS from said infringements.

372. Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such amounts as may be proper under 17 U.S.C. §504.

373. Plaintiff has no adequate remedy at law. Unless restrained by this Court, the SANTANA DEFENDANTS will continue to infringe Plaintiff's rights in his copyrighted works.

**COUNTS I, II, III and IV - PRAYER FOR RELIEF COMMON TO ALL DEFENDANTS**

WHEREFORE, Plaintiff ERIC GOTTESMAN respectfully requests judgment as follows:

GMAN v. Santana, et al.– COMPLAINT - Page 80

(1) That the Court enter a judgment against each Defendant that they have:

a. willfully infringed Plaintiff's rights in federally registered copyrights under 17 U.S.C. § 501, and

b. otherwise injured the business reputation and business of GMAN by Defendants' acts and conduct as set forth in this Complaint;

(2) That the Court issue permanent injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with they, be enjoined and restrained from copying, posting or making any other infringing use or infringing distribution of art and designs or other materials owned by or registered to GMAN;

(3) That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of GMAN's art and designs or other materials, which are in Defendants' possession or under their respective control;

(4) That the Court order Defendants to pay GMAN's general, special, actual and statutory damages for Defendants' infringement and unfair trade practices as follows:

    a. GMAN's damages and Defendants' profits (including all royalties and/or license fees resulting from the infringements) pursuant to 17 U.S.C. § 504(b);

    b. Because Defendants infringements were willful, statutory damages should be enhanced pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of Plaintiff's copyrights; and

GMAN v. Santana, et al.– COMPLAINT - Page 81

c. GMAN's damages and Defendants' profits pursuant to Cal. Civ. Code § 3344 or in the alternative statutory damages pursuant to Cal. Civ. Code § 3344;

(5) That the Court order Defendants to pay punitive damages pursuant to Cal. Civ. Code §3344;

(6) That the Court order Defendants to pay GMAN both the costs of this action and the reasonable attorney's fees incurred in prosecuting this action pursuant to 17 U.S.C. §504 and Cal. Civ. Code §3344(a);

(7) That the Court Order each Defendant to provide an audited accounting and identification with contact information of all printers, wholesalers, retailers, distributors, and websites of all entities used by each of the defendants along with an accounting of all monies, assets, and other consideration of any kind that they jointly or severally received via the sale of each item infringing GMAN's copyrights.

(8) That the Court grant GMAN such other and additional relief as is just and proper.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract)**
**GMAN v. SERVICE FIRST and HALL**

374. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 373, inclusive.

375. GMAN entered into a verbal contract with SERVICE FIRST which required this defendant to pay GMAN for the license to limited use of the salsa labels and associated designs and time taken to create the works at an agreed upon rate.

376. HALL is personally liable for SERVICE FIRST breach of contract as the alter-ego of SERVICE FIRST for the reasons already alleged above.

377. Despite GMAN's demands for payment, these defendants breached the parties' contract by continuing to refuse to pay as agreed.

378. GMAN has timely and fully performed all of his obligations under the parties' contract.

379. As a direct and proximate result of SERVICE FIRST breach of contract, GMAN has been damaged in an amount to be proven at trial.

**COUNT V – PRAYER FOR RELIEF**

GMAN demands judgment against DEFENDANTS SERVICE FIRST and LINTON HALL in amounts as proven at trial.

**SIXTH CAUSE OF ACTION**
**(Intentional Misrepresentation)**
**PLAINTIFF vs. The SANTANA DEFNDANTS and SERVICE FIRST DEFENDANT**

380. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 379, inclusive.

381. DEFENDANTS SANTANA MANAGEMENT intended to and in fact did mislead and deceive when they told GMAN that they had no interest of any kind or in any use of the MIRROR ABRAXAS or MIRROR ABRAXAS COLLECTION that GMAN delivered to them in good faith for evaluation purposes only.

382. As previously alleged, in good faith and "on spec", GMAN created and delivered for evaluation purposes only, the MIRROR ABRAXAS and MIRROR ABRAXAS COLLECTION creations which included numerous original images and digital files of works in various color combinations.

383. As a result of these Defendants' prior relationship with GMAN and GMAN's personal relationship with SANTANA MANAGEMENT and SANTANA himself these Defendants knew that at the time they received the

MIRROR ABAXAS and MIRROR ABRAXAS COLLECTION that GMAN would rely on their representations that they received art was for evaluation purposes only as agreed.

384. THE SANTANA DEFENDANTS represented they had no interest in the unpublished COLLECTION and had decided to pursue alternate designs instead and so would not be using the COLLECTION for any purpose.

385. GMAN justifiably relied on the above Defendants' misrepresentations for the reasons alleged above.

386. Contrary to their express representations that the MIRROR ABAXAS and THE MIRROR ABRAXAS COLLECTION had been rejected, THE SANTANA DEFENDANTS pirated GMAN's copyrighted work and copied, distributed, sold and sub-licensed same for their own commercial and financial gain.

387. As a direct and proximate result of these Defendants' misrepresentations as described, GMAN has been damaged in amounts that may be proven at trial.

388. These Defendants' conduct was so wanton and willful as to justify an award of punitive damages.

**COUNT VI – PRAYER FOR RELIEF**

GMAN demands judgment against each of THE SANTANA DEFNDANTS in amount as proven at trial including an award of punitive damages.


**SEVENTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**PLAINTIFF vs. THE SANTANA DEFNDANTS and SERVICE FIRST**
**DEFENDANT**

389. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 388, inclusive.

390. DEFENDANTS SANTANA MANAGEMENT knew or should have known, due to their prior course of conduct , and GMAN's personal relationship with SANTANA himself, that their representations regarding a total lack of interest or intention of any kind for any use of the MIRROR ABRAXAS and MIRROR ABRAXAS COLLECTION digital files entrusted to them by GMAN in good faith for evaluation purposes only would cause GMAN to justifiably believe those representations to be true.

391. GMAN justifiably relied on the above Defendants' misrepresentations for the foregoing reasons.

392. As a direct and proximate result of these Defendants' misrepresentations as described, GMAN has been damaged in amounts that may be proven at trial.

**COUNT VII – PRAYER FOR RELIEF**

GMAN demands judgment against each of THE SANTANA DEFNDANTS in amount as proven at trial.

**EIGHTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**PLAINTIFF vs. The SANTANA DEFNDANTS, SALVADOR**
**SANTANA, and SERVICE FIRST DEFENDANT**

393. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 392, inclusive.

394. As previously alleged, GMAN and SANTANA enjoyed a personal and business relationship which SANTANA knew or should have known would and did cause GMAN to place personal trust in SANTANA's promise that

GMAN would be paid for his ideas, designs and art, that the ideas, designs and art would not be used or any unauthorized purpose unless that use was specifically authorized by GMAN and GMAN was paid amounts agreed between the parties, and that any ideas, designs and art that were not paid for and/or not used as agreed would be held in strict confidence.

395. SANTANA, THE SANTANA DEFENDANTS and SALVADOR implicitly promised not to use GMAN's art, ideas, or concepts without his consent.

396. SANTANA, THE SANTANA DEFENDANTS and SALVADOR breached their implied agreement not to use, copy, distribute or publish GMAN's works for any purposes beyond those specifically authorized by GMAN and to honor their promises not to use or otherwise pirate GMAN's ideas, concepts, designs and art that were submitted by GMAN in good faith for evaluation purposes only especially where these Defendants represented that they had rejected any use of that art.

397. SALVADOR implicitly promised not to use GMAN's art, ideas, or concepts  in connection with the SSB LOGO, SSB YELLOW and SSB BLUE works without GMAN's consent.

398. SALVADOR breached their implied agreement not to use, copy, distribute or publish GMAN's works for any purposes beyond those specifically authorized by GMAN when he received the SSB LOGO, SS BLUE and SS YELLOW artworks for evaluation purposes only, and did not request or receive any consent from GMAN for any commercial use whatsoever.

399. Defendants' respective agreements to limit their use of the works to the specific uses authorized by GMAN, and other agreements to review the art for evaluation purposes only, contained an implied covenant of good faith and fair dealing which obligated Defendants to perform the terms and

conditions of those agreements fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of his copyright interest in his works or pirating of his art and branding ideas and concepts, especially those that were specifically rejected by THE SANTANA DEFENDANTS as identified above.

400. These Defendants each repeatedly acted in bad faith as alleged above.

401. It would be unjust for Defendants to retain any profits or monies received from their unlawful and wrongful conduct as described.

402. Defendants should be required to pay and/or disgorge to GMAN, all profits and monies received, and/or the value of all items exchanged, and/or traded for, their respective unauthorized uses of the works delivered to them by GMAN and all derivative works created by them and any third parties that wrongfully traded off of GMAN's works or created derivative works from GMAN's works, ideas and concepts.

403. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, GMAN has suffered injuries and damages in an amount according to proof.

404. Defendants' conduct as described was with malice and utter disregard of GMAN's rights and the extreme damages that GMAN would suffer as a result of Defendants' unjustifiable conduct.

405. In light of the pervasive infringements and direct intentional misrepresentations made by the THE SANTANA DEFENDANTS', their conduct is sufficiently extreme and outrageous to sustain an award for punitive damages.

**COUNT VIII – PRAYER FOR RELIEF**

(1) GMAN demands judgment against each of THE SANTANA DEFNDANTS, SALVADOR SANTANA and SERVICE FIRST in amounts as proven at trial.

(2) GMAN demands an award of punitive damages against each of THE SANTANA DEFENDANTS.

## NINTH CAUSE OF ACTION
### (Unfair Practices B&P §17500)

406. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 405, inclusive.

407. Defendants' conduct as described above constitutes unfair trade practices and unfair competition against GMAN to GMAN's irreparable damage.

408. Defendants each respectively violated the U.S. Copyright statute and the California law giving rise to GMAN's claims of Unfair Practices claims under the unlawful prong.

409. The SANTANA DEFENDANTS intentional deceptions as described above gives rise to legal claims and relief that are in addition to the claims and relief covered by the U.S. Copyright Act.

410. The SANTANA DEFENDANTS and SALVARDORE's acts of using the works for unauthorized commercial purposes, inducing third parties to violate GMAN's copyright as alleged above, and retention, copying, distribution and sale of the rejected works or works received by them for evaluation purposes only gives rise to GMAN's claims of Unfair Practices under the Unfair Prong and are beyond the claims and relief afforded GMAN under the U.S. Copyright Act.

411. As well, THE SANTANA DEFENDANTS acts of using the MIRROR ABAXAS and THE MIRROR ABRAXAS COLLECTION for commercial

purposes predicated upon their intentional deceit made possible as a result of GMAN's personal relationship with SANTANA via the deceptive manner by which it was acquired as alleged above, gives rise to GMAN's claims of Unfair Practices under the Fraud Prong.

412. THE SANTANA DEFENDANTS' conduct as described is sufficiently extreme and outrageous to sustain an award for punitive damages.

413. As a direct and proximate result of THE SANTANA DEFENDANTS and SALVADOR SANTANA'S unfair practices and deceits as described, GMAN has been damages in amounts to be proven at trial.

## COUNT IX – PRAYER FOR RELIEF

(1) GMAN demands judgment against each of THE SANTANA DEFNDANTS and SALVADOR SANTANA in amount as proven at trial.

(2) GMAN demands an award of punitive damages against each of THE SANTANA DEFENDANTS.

## TENTH CAUSE OF ACTION
### (Constructive Trust)
GMAN v. ALL DEFENDANTS

414. GMAN repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 413, inclusive.

415. Upon information and belief, GMAN alleges that his works were misappropriated, converted, taken and withheld from GMAN as alleged.

416. Further, that each Defendant and others presently unknown to GMAN, knew at the time of the receipt of his works that same were not the property of the person or persons who provided same to said Defendants, but rather were property of GMAN.

417. By reason of the foregoing, GMAN prays this Court that each such Defendants, and others, presently unknown to GMAN, hold his works and all profits derived by the sale of those works as constructive trustees for GMAN.

**COUNT X – PRAYER FOR RELIEF**

That the Court imposes a Constructive Trust on each Defendant to hold GMAN's works and profits as Constructive Trustees for the benefit of GMAN.

**JURY DEMAND**

Plaintiff hereby demands a jury trial in this case.

November 21, 2016

Respectfully submitted,

/s/Marc S. Bragg
Marc S. Bragg, Esquire
Law Offices of Marc S. Bragg
Attorney for Plaintiff
3641 Kingsley St.
S.D., Ca., 92106
484 459 1623
GmanVSantana@gmail.com