# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GOTTESMAN,<br><br>                    Plaintiff,<br><br>v.<br><br>CARLOS SANTANA, et al.,<br><br>                    Defendants. | Case No.: 16-CV-2902 JLS (JLB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY FEES**<br><br>(ECF No. 175) |

      Presently before the Court is Defendant Daniel J. Schacht, Esq.'s ("Schacht") Motion for Attorney Fees. ("MTN," ECF No. 175.)[1] Also before the Court are Plaintiff's Response in Opposition to Motion for Attorney Fees ("Opp'n," ECF No. 184), as well as Defendant's Reply in Response, ("Reply," ECF No. 187), to Plaintiff's Opposition. The Court previously found that Defendant was a prevailing defendant under the anti-SLAPP statute. ("Previous Order," ECF No. 171.) The Court ordered the parties to file supplemental briefing on whether California law allows Defendant to recover attorney's fees. (*Id.* at 17, 20.)[2] After considering the parties' arguments and the law, the Court rules as follows.

---

[1] Unless otherwise noted, citations to "MTN" reference the Memorandum of Points and Authorities In Support of Daniel J. Schacht's Motion for Attorney's Fees (Anti-SLAPP Motion). (ECF No. 175-1.)

[2] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

## BACKGROUND

The Previous Order contains a thorough and accurate recitation of the procedural history and facts underlying Plaintiff's complaint. (Previous Order 2–3.) As relevant here, Plaintiff filed a 103-page, 473-paragraph FAC against dozens of Defendants associated with Defendant Carlos Santana. (ECF No. 38.) The gravamen of Plaintiff's claims is that these Defendants infringed his copyrights in several of Plaintiff's works by exceeding the scope of the licenses in those works. (*See generally* FAC.) Plaintiff filed six claims against law firm Defendant Donahue Fitzgerald LLP ("Donahue") and Daniel J. Schacht, a partner at Donahue, (collectively "Attorney Defendants," ECF No. 175-3, Schacht Decl. ¶ 1). These included four federal claims: (1) copyright infringement under 17 U.S.C. § 501; (*see, e.g.*, *id.* ¶ 200–01), (2) contributory copyright infringement; (*id.* ¶ 407), (3) vicarious copyright infringement; (*id.* ¶ 415), (4) inducing copyright infringement; (*id.* ¶ 423), as well as two state law claims: unfair business practices; (*id.* ¶ 463), and constructive trust, (*id.* ¶ 471). Generally, Plaintiff alleges that Defendant Donahue is the registrant, administrator, and technical operator for two websites (www.santana.com and www.carlossanta.com) that contained infringing material. (*Id.* ¶ 137.) Schacht is the point of contact for those two websites and is the signatory to federal two trademark applications and registrations that contain Plaintiff's designs. (*Id.* ¶¶ 139–40.)

On March 17, 2017, Attorney Defendants Donahue and Schacht filed a special motion to strike the California state law claims pursuant to California's anti-SLAPP statute. (ECF No. 77.) On April 13, 2017, Plaintiff voluntarily dismissed both Defendants Donahue and Schacht from the action. (ECF No. 130.) In deciding the anti-SLAPP motion, the Court determined that it had jurisdiction to determine Attorney Defendants' motion on the merits and found that they were "prevailing defendants" under California Code of Civil Procedure § 425.16(a). (ECF No. 171.) The Court also found, however, that because both Attorney Defendants were attorney litigants and, potentially representing themselves, supplemental briefing was needed to determine whether

Attorney Defendants could recover attorney's fees. (Previous Order 19–20.) Only Defendant Schacht, not Defendant Donahue, filed a renewed request for attorney's fees in the amount of $58,263.30. (ECF No. 175, at 2.)

## LEGAL STANDARD

California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute provides redress for those hauled into court "primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). Specifically, the statute provides a special motion to strike which may entitle successful movants to attorneys' fees and costs. *Id.* §§ 425.16(b), (c)(1). "California's anti-SLAPP statute allows a defendant to move to strike a plaintiff's complaint if it 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). "The California legislature has instructed that the statute should be 'construed broadly.'" *Id.* (quoting Cal. Civ. Proc. Code § 425.16(a)). Furthermore, anti-SLAPP motions can be raised in federal court to target state law claims. *See, e.g.*, *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 n.5 (9th Cir. 2013) ("We have held that [an anti-SLAPP] motion is available against state law claims brought in federal court.").

California follows the American rule for attorney's fees; each party to a lawsuit must ordinarily pay its own attorney's fees. *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995). The anti-SLAPP statute allows "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1).

## ANALYSIS

### I. Plaintiff's Request to Reconsider the Court's Anti-SLAPP Ruling

In its Previous Order, the Court determined that Attorney Defendants were "prevailing defendants" for the purposes of the anti-SLAPP statute. (Previous Order 12.)

Plaintiff asks the Court to reconsider its ruling for a variety of reasons. (*See* Opp'n 6–10.) None are persuasive.

At the outset, the standard for reconsidering a previous ruling is difficult to meet. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.*

Plaintiff advances four arguments. First, Plaintiff argues that the pending fee motion, not the previous anti-SLAPP Motion to Strike, is the appropriate time to consider whether anti-SLAPP applies at all. (Opp'n 6.) Plaintiff suggests that because the Court previously denied as moot Plaintiff's Motion to Strike, (ECF No. 158), and Attorney Defendants' anti-SLAPP Motion to Strike, (ECF No. 77), he should have a second attempt arguing the merits of the anti-SLAPP motion.[3] (Opp'n 6.) The Court may have denied as moot Attorney Defendants' Motion, (Previous Order 6), but it did so because Plaintiff voluntarily dismissed Attorney Defendants, (*id.*), and after holding that Attorney Defendants were "prevailing defendants" under anti-SLAPP. (*See id.* at 17.) The Court then ordered Attorney Defendants to file their motion for attorney's fees, (*id.* at 20). The fact that the Court denied as moot Attorney Defendants' anti-SLAPP Motion to Strike, on a procedural grounds, is no reason to ignore the substance of the Previous Order.

---

[3] Plaintiff cites a footnote in *S.B. Beach Properties v. Berti*, 39 Cal. 4th 374 (2006), for the proposition that "a defendant who is voluntarily dismissed, with or without prejudice, after filing a section 425.16 motion to strike, is nevertheless entitled to have the merits of such motion heard as a predicate to a determination of the defendant's motion for attorney's fees." *Id.* at 378 n.2. This is exactly what occurred here: Defendant Schacht was voluntarily dismissed without prejudice, the Court ruled on his section 425.16 motion to strike, (Previous Order 19 ("Today, the Court only concludes that Attorney Defendants are prevailing defendants under California's anti-SLAPP statute.")), and now the Court determines the motion for attorney's fees.

Second, Plaintiff contends California's anti-SLAPP law does not apply in federal courts. (Opp'n 6–7.) Perhaps sensing the futility of this argument, Plaintiff briefly cites Judge Watford's dissent in *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013), voicing support for a Ninth Circuit en banc panel to reconsider and reverse the Circuit's "precedent permitting application of state anti-SLAPP statutes in federal court." *Id.* at 1189–90 (Watford, J., dissenting from denial of rehearing en banc). The Court previously determined California's anti-SLAPP statute applies in federal court. (Previous Order 9.) A dissenting opinion is neither controlling on this Court, *see, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."), nor any justification for departing from controlling law. *See, e.g.*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding district court erred in finding California's anti-SLAPP statute did not apply in federal court).

Third, Plaintiff asks the Court to find that the commercial speech exception, found in section 425.17(c),[4] negates section 425.16. (Opp'n 7.) "The commercial speech exemption [in section 425.17(c)] is a statutory exception to section 425.16 and should be narrowly construed." *JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 992 (Ct. App. 2016) (quoting *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 22 (2010) ("*Simpson*")) (internal quotation marks omitted). "[T]he party seeking the benefit of the commercial speech exemption, [has] the burden of proof on each element." *Id.* (quoting *L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of L.A.*, 239 Cal. App. 4th 918, 931 (Ct. App. 2015) (alterations in original). The California Supreme Court

---

[4] Section 425.17(c) provides in relevant part:
> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person [which] . . . consists of representations of fact about that person's or a business competitor's business operations, goods, or services. . . .

Cal. Civ. Proc. Code § 425.17(c).

articulated four elements necessary to exempt a cause of action from the anti-SLAPP law:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).

*Simpson*, 49 Cal. 4th at 30.

Plaintiff argues that Attorney Defendants were primarily engaged in selling services, i.e., legal services. (Opp'n 8.) He also argues Attorney Defendants' conduct was made in the course of delivering a service; specifically, "in connection with their claimed protected conduct of filing a trademark application that contained an image that infringed plaintiff's copyright." (*Id.*) Finally, the conduct arose out of a regulatory approval process, proceeding, or investigation—the filing of a trademark application. (*Id.*)

Applying *Simpson*, Attorney Defendants meet the first element because they were primarily engaged in selling legal services. Their conduct does not, however, meet the second element. Plaintiff argues Attorney Defendants' conduct at issue is "filing a trademark application." (*Id.*) The act of filing a trademark is not a representation about their own business—Defendants made representations on behalf of its client. Nor is it statement or conduct about a competitor's business—Donahue and Schacht's business competitors are other law firms. The relevant comparison is not Attorney Defendants' conduct or statement relative to Plaintiff, but to Attorney Defendants' business competitors for legal services. Therefore, pursuant to *Simpson* and section 425.17(c) Attorney Defendants are not making a representation about themselves or a business competitor.

6

The case law Plaintiff cites buttresses this conclusion. In its Previous Order, the Court relied in part on *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 593 (9th Cir. 2010) ("*Mindys*"), for the proposition that filing a trademark application with the U.S. Patent and Trademark Office is protected by the anti-SLAPP statute. (Previous Order 15.) Plaintiff references a single quote from *JaM Cellars, Inc v. Vintage Wine Estates, Inc.*, No. 17-1133-CRB, 2017 WL 2535864, at *3 (N.D. Cal. June 12, 2017), to distinguish *Mindys* from trademark infringement cases: "Many infringement cases will mention a defendant's trademark application process, and they cannot all run afoul of the anti-SLAPP statute." The Court does not disagree with such a generalized statement. Yet, Plaintiff does not go further to explain how *JaM Cellars*'s facts support his claim. In *JaM Cellars*, not only did the plaintiff allege that the defendant's lawyer filed trademark registrations, but also that the defendant attempted to "trade on the goodwill of JaM's [trademarks], to 'use' the contested marks, to market competing wines . . . and to use[] the [competing wines] in commerce." *Id.* (citations omitted) (second and third alterations in original).

Here, Plaintiff only argues that the section 425.17(c) exception applies because of Attorney Defendants' conduct in "filing a trademark application that contained an image that infringed on plaintiff's copyright." (Opp'n 8.) This reflects only the protected activity of filing a trademark and does not reach the unprotected activity in *JaM Cellars*. Therefore, Plaintiff fails to establish Attorney Defendants meet *Simpson*'s second element and section 425.17(c)'s commercial speech exception does not apply.

Fourth, Plaintiff argues that the anti-SLAPP does not apply to state law claims that are inextricably intertwined with federal statutory claims. (Opp'n 9.) Both parties agree that California's anti-SLAPP statute does not apply to federal claims. (*Id.*; Reply 8.) The Court previously recognized that Attorney Defendants' anti-SLAPP motion was based only on Plaintiff's state law claims against Attorney Defendants. (Previous Order 13.) Plaintiff does not adequately explain the basis for its proposed rule that anti-SLAPP does not apply when state law claims that are inextricably intertwined with federal claims.

Plaintiff quotes language from *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010), which seems to suggest federal courts lack jurisdiction to review these intertwined actions.[5] *Hilton* does not reach Plaintiff's proposed rule. The relevant issue in *Hilton* was whether an appellate court had jurisdiction to review the denial of a motion to dismiss a federal claim that was inextricably intertwined with an anti-SLAPP motion. *Id.* at 900. The *Hilton* court concluded that because anti-SLAPP does not apply to federal causes of action it could not hear an appeal on a Rule 12(b)(6) denial of motion to dismiss of a federal cause of action. *Id.* at 901. The court went on to decide the merits of the anti-SLAPP motion. *See id.* at 902. Thus, an anti-SLAPP motion to strike based on state law was properly appealable at the interlocutory stage, while the federal claim was not. This is no basis to argue that anti-SLAPP does not apply at all. This Court's Previous Order only analyzed Defendants' anti-SLAPP motion as to Plaintiff's state law claims. (Previous Order 13.) *Hilton* provides no applicable relief here.

In sum, Plaintiff's arguments for reconsideration are unavailing—Plaintiff presents no clear error or other highly unusual circumstance justifying reconsideration. *See Carroll*, 342 F.3d at 945. Furthermore, each argument could have been raised in response to the original anti-SLAPP motion to strike. *See id.* The Court reaffirms its previous holding that Attorney Defendants are proper "prevailing defendants" and turns to whether Defendant Schacht can recover attorney's fees.

## II. Whether Defendant Schacht May Receive Attorney's Fees

The California Supreme Court's decision in *Trope v. Katz*, 11 Cal. 4th 274 (1995), laid the groundwork for an exception to the anti-SLAPP fee-shifting statute. In that case, the Court held that a law firm was not entitled to recover reasonable attorney's fees after successfully representing itself in a breach of contract case brought by a client. *Id.* at

---

[5] Plaintiff quoted the following language: "Because a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims, there is no properly appealable order with which the Lanham Act claim could be inextricably intertwined. We therefore lack jurisdiction to review it." *Hilton*, 599 F.3d at 901. "Indeed, it could not have moved to strike the Lanham Act claim because, as the parties agree, the anti-SLAPP statute does not apply to federal law causes of action." *Id.*

277. The Court reasoned that despite the availability of reasonable attorneys' fees to the prevailing party under the parties' contract, which was enforceable under California Civil Code section 1717's contractual fee-shifting provision, an "attorney who chooses to litigate in propria persona . . . does not pay or become liable to pay consideration in exchange for legal representation [and thus] cannot recover 'reasonable attorney's fees' under Civil Code section 1717." *Id.* at 292. The *Trope* Court reasoned that the legislature

> did not intend to allow doctors, architects, painters, or any other nonattorneys to receive compensation for the valuable time *they* spend litigating a contract matter on their own behalf. Therefore, to [award attorney fees] in this context would be to hold that the time and opportunity that an attorney gives up when he chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants. There is no support in either the language or legislative history of section 1717 for such disparate treatment of pro se litigants on the basis of their occupations.

*Id.* at 285 (citations omitted). Thus, the ordinary meaning of "attorney's fees" is "the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation." *Id.* at 280.

Since the *Trope* decision, several California appellate courts have extended *Trope*'s holding—barring certain attorneys recovering attorneys' fees—to the anti-SLAPP attorney's fee shifting statute. Cases involving an attorney represented by her firm can generally be divided into two groups of cases—those where an attorney can recover fees and those where the attorney cannot. The Court will briefly review the relevant case law.

### A. *When an Attorney Litigant Can Recover Attorney's Fees Under Anti-SLAPP*

A trio of cases illustrate when an attorney litigant, represented by her own firm,

may recover attorney's fees under a fee shifting statute. First, in *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084 (2000) ("*PLCM*"), the California Supreme Court held that a corporate litigant could recover fees performed by its in-house counsel. *Id.* at 1094. The Court distinguished its holding in *Trope* because none of the animating concerns of *Trope* were present. In-house attorneys, like private counsel, but unlike pro se litigants, do not represent their own interests, but rather the corporation's interests. The in-house attorney is not seeking remuneration for lost opportunity costs. *Id.* at 1093. A corporation is in an agency relationship with its in-house counsel; paying a salary to an in-house counsel is like hiring a private firm on retainer. *Id.* Thus, the ethical and fiduciary relationship between in-house counsel and the corporation is no different than those provided by an outside firm. *Id.* In this situation, attorney's fees were permitted.

Next, *Gilbert v. Master Washer & Stamping Co.*, 87 Cal. App. 4th 212 (Ct. App. 2001), arose from a landlord-tenant dispute. Initially, Gilbert, a tenant, filed suit against Master Washer, the landlord. *Id.* at 214. Master Washer countersued in a separate action and named Gilbert's attorney, Gernsbacher, in the complaint for his alleged role in preventing the landlord from recovering its property. *Id.* The attorney then requested fees under Civil Code section 1717. *Id.* at 217. The trial court, relying on *Trope*, denied Gernsbacher attorney's fees because his own law firm represented him. *Id.* On appeal, the *Gilbert* court distinguished *Trope* in two respects. First, a partner represented by his firm experiences a reduced draw from the partnership. *Id.* at 221. This was different than the lost opportunity cost that motivated the *Trope* decision—the economic detriment was not caused by his own expenditure of time but that of the firms attorneys on his behalf. *Id.* Second, Gernsbacher was in an attorney-client relationship with his firm and the firm represented Gernsbacher's "separate and distinct interests." *Id.* at 222. With these considerations in mind, the *Gilbert* court held that Gernsbacher, who was sued for interests separate and distinct from the firm's, could receive attorney's fees. *Id.* at 224.

Lastly, in *Gorman v. Tassajara Development Corp.*, 178 Cal. App. 4th 44 (Ct. App. 2009), an attorney litigant hired a law firm to represent him and his wife in an

action against a contractor for alleged defective construction of the attorney's home. *Id.* at 53. The attorney litigant, John Gorman, was the CEO and President of the law firm, Gorman & Miller PC. *Id.* at 52. The construction contract between Gorman and the defendant contractor included a fee-shifting clause under which Gorman sought to recover his attorney's fees. *Id.* at 52–53. Relying on *Trope*, the *Gorman* court determined that the attorney could not recover any fees for representing either himself or his spouse because there was no indication that the spouse suffered any damages apart from those suffered by her husband, Gorman. *Id.* at 95. Their interests appeared to be "joint and indivisible." *Id.* However, relying on *Gilbert*, the court held that Gorman could recover costs incurred by the firm representing him in a personal matter. *Id.* at 96 ("We believe that *Trope* does not preclude the recovery of fees for other attorneys and paralegals hired by Gorman to represent him, even if they work in his law firm.").

### B. *When an Attorney Litigant Cannot Recover Attorney's Fees*

In *Witte v. Kaufman*, 141 Cal. App. 4th 1201, 1211–12 (Ct. App. 2006), the court rejected an award for attorney's fees incurred by three attorneys on behalf of their own law firm, finding that by representing their firm "they are comparable to a sole practitioner representing himself or herself." The court determined, like *Trope*, there is no attorney-client relationship between the firm and its individual attorneys. *Id.* at 1211. The attorneys of the firm are the "law firm's product." *Id.* Critically, the *Witte* court held that when individual attorneys represent the interests of the firm, they are also representing their own interests. *Id.*

*Carpenter & Zuckerman v. Cohen*, 195 Cal. App. 4th 373 (Ct. App. 2012) ("*Carpenter*"), relied on *Witte* to hold that a law firm and two of its partners, who were represented by an associate at the firm, could not recover fees. *Id.* at 375. There, defendants filed a cross complaint against both the partners and the law firm alleging economic advantage and defamation. *Id.* at 376. The partners and firm prevailed in an anti-SLAPP motion to strike, but after submitting its memorandum of costs the trial court found that the attorney litigants were representing themselves and could not recover

under *Trope*. *Id.* at 377. The attorneys argued that the associate representing them was actually an independent contractor, that she had entered into a fee retainer agreement, she was not a partner so could not share in the firm's profits or losses, and that she had an attorney-client relationship with the attorneys. *Id.* On appeal, the court placed great emphasis on the trial court's finding that the associate was not an independent contractor. *Id.* at 385. Unlike *Gorman* and *Gilbert*, where the firm represented attorney litigants in personal matters, the attorney in *Carpenter* represented the interests of the law firm for which she worked. *Id.* Unlike *PLCM*, the associate attorney was hired to represent the interests of the clients of the law firm and not a third party corporation. *Id.* The court determined that the law firm could not recover fees. *Id.*

The *Carpenter* court also examined whether the individual attorneys could recover fees even if their law firm could not. The gravamen of the individual attorney litigants' argument was that the claims against them put their "personal interests at stake" and "they were in the same position as the attorney litigant in *Gilbert*." *Id.* at 386. The Court of Appeal found no personal liability because the attorney litigants did not submit any evidence that they were subject to personal liability. *Id.* In fact, the defendants in the cross-complaint asserted the causes of action jointly against the law firm and its two partners. *Id.* Thus, the allegations were based upon "conduct undertaken by individual plaintiffs in the course of the law firm's business, and there were no allegations concerning conduct by either of the individual plaintiffs that was unrelated to the business or goals of the firm." *Id.* at 387. The court also noted that there was no evidence that the firm's associate "performed any services on behalf of the individuals, in addition to the time she spent representing the interests of the firm." *Id.* In sum,

> if the law firm and its partners or associates who acted on behalf of the firm are named and they are all represented by a partner or associate of the law firm, the principles of *Trope* and *Witte* should apply, unless it can be shown that the representation of partners or associates related to the protection of their individual interests from realistic personal exposure.

*Id.*

Thus, *Trope* and its progeny teach that if an attorney litigant represented by his or her own firm seeks to recover attorney's fees under a fee-shifting statute there must be some personal liability on the part of the attorney litigant. *See Carpenter*, 195 Cal. App. 4th at 386; *Witte*, 141 Cal. App. 4th at 1211. This personal liability must be separate and apart from the law firm's own liability. *See Carpenter*, 195 Cal. App. 4th at 386; *see also Soni v. Wellmike Enter. Co.*, 224 Cal. App. 4th 1477, 1490 (Ct. App. 2014). But, when a law firm's attorneys "represent the law firm, they are representing their own interests. As such, they are comparable to a sole practitioner representing himself or herself." *Witte*, 141 Cal. App. 4th at 1211. The same reasoning applies to individual attorney litigants represented by their law firm. "[I]f the law firm and its partners or associates who acted on behalf of the firm are named and they are all represented by a partner or associate of the law firm, the principles of *Trope* and *Witte* should apply, unless it can be shown that the representation of partners or associates related to the protection of their individual interests from realistic personal exposure." *Carpenter*, 195 Cal. App. 4th at 387.

### C. *Applying* **Trope** *and Its Progeny*

Defendant advances three arguments as to why *Trope* does not apply. First, fees were actually incurred by Defendant Santana Tesoro and are not lost opportunity costs for Schacht. (MTN 16–17.) Second, an attorney-client relationship exists between Schacht and Donahue. (*Id.* at 18.) Third, Schacht's personal interests were implicated despite appearing to have identical interests with his firm. (*Id.* at 19.) The Court considers each in turn.

First, Defendant Schacht argues that Santana Tesoro paid for the defense costs of more than thirty defendants, including Schacht. (*Id.* at 17.) From that premise, Defendant reasons that costs of defense are incurred, as required by *Trope*, and then paid by Santana Tesoro. (*Id.*) Defendant also argues that it does not matter that the fees were not actually incurred by him or that he is not personally liable for the fees. (*Id.* (citing *Macias v. Hartwell*, 55 Cal. App. 4th 669, 675–76 (Ct. App. 1997); *see also Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283–84 (Ct. App. 2001).) Plaintiff counters that even

though Defendant essentially has indemnification from its client Defendant did not hire counsel or incur fees for his representation in this action. (Opp'n 12.)

The Court agrees that, in principle, a party can recover under a fee-shifting statute even though that party did not actually incur fees. In *Rosenaur*, the California Court of Appeal held that "the recovery of attorney fees by a defendant who successfully brings an anti-SLAPP motion—regardless of whether the defense costs are underwritten by another—is consistent with its evident statutory purpose." 88 Cal. App. 4th at 28. Thus, the fact that Defendant's fees are being underwritten by Defendant Santana Tesoro does not bar recovery of attorney's fees.

It does not, however, answer the question of whether the defendant—here, Schacht—actually incurred fees. The relevant inquiry is not whether a third party payor paid for a defendant's fees, but rather whether a defendant, as an attorney litigant, actually incurred costs beyond lost opportunity costs. Hypothetically, if there were two pro se defendants—one a law firm and the other a non-lawyer—and each defendants' bill was paid by a third party then *Trope* bars recovery of attorney's fees for both defendants. *Trope* prevents disparate recovery between attorney and nonattorney pro se litigants, *see Carpenter*, 195 Cal. App. 4th at 379, and the above hypothetical illustrates that presence of a third party payor alone does not mean that a defendant incurred fees. Santana Tesoro's status as the ultimate payor of Schacht's costs is neither a bar to recovery nor dispositive in this inquiry. Therefore, the Court must determine whether (a) there was an attorney-client relationship between Schacht and Donahue and (b) whether Schacht had potential personal liability separate apart from Donahue's potential liability.

Second, Defendant argues that an attorney-client relationship exists between it and Donahue Fitzgerald, which would bolster his claim that he is not a pro se litigant. (MTN 18.) Both Schacht and Andrew MacKay, the managing partner of Donahue, state in their declarations that Donahue represents Schacht. (MTN 19; *see* MacKay Decl. ¶ 2; Schacht Decl. ¶ 8.) Defendant also argues that Plaintiff's counsel implicitly acknowledged the representation in a communication between the parties. (MTN 19 (Plaintiff's counsel

wrote: "In that [Schacht] is now a named defendant and I assume represented by you [MacKay], I'm uncomfortable speaking directly with him without your written permission to do so.").) Plaintiff agrees that Plaintiff's counsel's statement was "intended to avoid running afoul of California's Professional Rules of Conduct." (Opp'n 15.) Plaintiff goes on to argue that this omission does not alter Schacht's work for Donahue as the "law firm's product." (*Id.* (citing *Carpenter*, 195 Cal. App. 4th at 382).)

At the outset, the Court notes that Defendant did not disclose a written contract between him and Donahue. In California, both contingency fee contracts and non-contingency fee contracts exceeding $1,000 are required to be in writing, *see* Cal. Bus. & Prof. Code §§ 6147–48; *see also Ellis Law Grp., LLP v. Nev. City Sugar Loaf Props., LLC*, 230 Cal. App. 4th 244, 256, 260 (Ct. App. 2014), *as modified* (Oct. 22, 2014) (citing no attorney-client fee agreement as indicia of attorney-client relationship between lawyer and law firm). The absence of a written fee agreement is not dispositive here, but does cut against the evidence submitted by Defendant. The evidence supporting the attorney-client relationship is as follows: declarations by Schacht and MacKay that they were in an attorney-client relationship, a communication from Plaintiff's counsel to MacKay seeming to acknowledge that Schacht was represented by counsel, and time keeping sheets from Donahue that do not include Schacht. Based on Defendant's declaration and Plaintiff's acknowledgement that any communication with MacKay was intended to avoid violating the Professional Rules of Conduct, there appears to be an attorney-client relationship. Plaintiff is correct, however, that the presence of an attorney-client relationship is dispositive. In *Carpenter*, the attorney litigants submitted declarations of their attorney, an associate of their firm, stating she was retained by the attorney litigants. 195 Cal. App. 4th at 377. The dispositive issue was not the existence of the attorney-client relationship but rather whether there was "potential personal liability" on the part of individual litigants. *Id.* at 386.

Third, Defendant argues that his personal interests were implicated. (MTN 19.) This is the crux of the analysis: if Defendant's liability was "separate and apart" from the

firm's potential liability then the holdings in *Gilbert* and *Gorman* will apply. *See Carpenter*, 195 Cal. App. 4th at 386 ("[B]ecause the claims against [the individual attorneys] placed their personal interests at stake, they were in the same position as the attorney litigant in *Gilbert*.")

Defendant urges the Court to adopt a rule that this element is "satisfied where, despite appearing to have identical interests, an attorney-litigant and his firm could have ended up with different and conflicting interests." (MTN 19 (citing *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1239 (9th Cir. 2001) ("*Farmers Insurance*")). The Court declines to adopt such a broad rule. The cases cited by Defendant are distinguishable. *Farmers Insurance* dealt with two law firms that hired each other to recover contingent fees against a former client that the firms jointly represented. 250 F.3d at 1235. The court reasoned that despite having nearly identical interests, "the two firms may have ended up in a dispute over whether one firm was entitled to a greater share of the contingent fee for performing more work on the litigation to recover the contingent fee." *Id.* at 1239. Here, Schacht and the lawyers representing him work for the same firm and not two different firms representing each other. Next, *Dzwonkowski v. Spinella*, 200 Cal. App. 4th 930, 932 (Ct. App. 2011), also cited by Defendant, dealt with a solo practitioner attempting to recover payment of fees from a client who then hired a second solo practitioner to represent him in litigation. *Dzwonkowski* relied on and analogized the facts to *Farmers Insurance*. *Id.* at 937–38. Indeed, like *Farmers Insurance* and unlike the facts here, *Dzwonkowski* involved two separate legal entities who entered into an attorney-client relationship.[6]

---

[6] Defendant also cites *Rickley v. Goodfriend*, 207 Cal. App. 4th 1528 (Ct. App. 2012), but that case is even farther afield than *Farmers Insurance* or *Dzwonkowski*. *Rickley* involved an attorney-litigant attempting to recover attorney's fees, but the attorney was attempting to do so under the fee shifting provision for civil contempt violations. Cal. Civ. Proc. Code § 1218; *Rickley*, 207 Cal. App. 4th at 1531. The *Rickley* court interpreted the purpose of the civil contempt statute as allowing recovery by a pro se attorney but only if the attorney-client relationship was present. *Rickley*, 207 Cal. App. 4th at 1537–38. The case at bar does not implicate the civil contempt statute. *Trope* and its progeny properly define the purpose of the anti-SLAPP statute as examining more than just the attorney-client relationship.

The relevant inquiry is whether "there was a genuine potential for personal liability, separate and apart from potential limited liability" of the law firm. *Carpenter*, 195 Cal. App. 4th at 386; *see also Soni*, 224 Cal. App. 4th at 1488 ("[A]n attorney litigant who is represented by other attorneys in a matter involving the attorney's personal interests may recover attorney fees, even if represented by other attorneys within the firm." (citations omitted))). Defendant Schacht must show that he would have potential personal liability separate from Defendant Donahue's. To this end, Schacht argues that officers and corporate agents engaged in copyright infringement, even when working on behalf of the businesses they serve, may be held personally liable for copyright infringement. (MTN 20 (citing *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 270 (S.D.N.Y. 2000).) Defendant also argues that Plaintiff alleged that Defendant was not simply acting as an attorney, but also personally profiting from infringement conducted through websites operated by Defendant and this allegation would put Defendant at risk for personal liability. (MTN 20.)

The Court finds that Defendant Schacht's potential personal liability is not separate and apart from his law firm's potential liability. Plaintiff alleged the same causes of action against Defendant Schacht and Defendant Donahue. Schacht was not liable for any cause of action beyond Donahue's potential liability. *Cf. Carpenter*, 195 Cal. App. 4th at 376 (stating that defendants alleged economic advantage and defamation against both the law firm and its partners). Furthermore, Schacht and Donahue's potential liability was joint and several—not individual. 17 U.S.C. § 505(a) provides for recovery for copyright infringement by either: (i) actual damages and profits or (ii) statutory damages.[7] No matter which option Plaintiff elects, Defendants will be subject to joint and several liability. "When a copyright is infringed, all infringers are jointly and severally liable for plaintiffs' *actual damages*, but each defendant is severally liable for

---

[7] Defendant's anti-SLAPP Motion to Strike was based on state law claims, but as Defendant pointed out in its Motion to Strike, both the Unfair Business Practices claim and the Constructive Trust remedy rely on some underlying violation of law: here, federal copyright infringement. (*See* ECF No. 77-1, at 16.)

his or its own illegal *profit*; one defendant is not liable for the profit made by another." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985) (citations omitted). However, "[t]he rule of several liability for profits applies, at least, where defendants do not act as partners, or 'practically partners.'" *Id.* Here, Defendant Schacht is a partner with Donahue Fitzgerald and would be jointly liable for actual damages and profits. Further, if Plaintiff elected statutory damages under § 505(c) then a court would award damages "for which any two or more infringers are liable jointly." 17 U.S.C. § 505(c). Thus, Defendant Schacht's potential liability for copyright infringement appears to be coextensive with Donahue's.

Defendant Schacht's arguments are inapposite. First, the rule from *Carell v. Shubert Organizations, Inc.* is not that corporate officers can be held personally liable for copyright infringement, but rather that "[c]orporate officers can be held *vicariously liable* for copyright infringement if they had (i) the right and ability to supervise the infringing activity; and (ii) an obvious and direct financial interest in exploitation of copyrighted materials." 104 F. Supp. 2d at 270 (emphasis added) (citing *Luft v. Crown Publishers, Inc.*, 772 F. Supp. 1378, 1380 (S.D.N.Y. 1991)). Schacht does not explain further how he qualifies as a corporate officer or how, even if he was vicariously liable, that would relieve him from joint liability with Donahue.[8]

Second, Plaintiff did allege that Schacht was not simply acting as an attorney, but also allegedly holding an ownership interest in several websites. (MTN 20; FAC ¶ 142.) This argument falls because Plaintiff alleged the same conduct against both Schacht and Donahue:

> Based on the above, GMAN alleges . . . that DONAHUE and/or Schaht [sic] are actively engaged in and/or co-managers and/or joint venturers in the business operations of the SANTANA

---

[8] In fact, the case that *Carell* relies on states: "All participants of a copyright infringement are jointly and severally liable." *Luft*, 772 F. Supp. at 1379 (citing *Chappell & Co. v. Frankel*, 285 F. Supp. 798, 800 (S.D.N.Y. 1968)). This statement of the law is incomplete, *see Frank Music Corp.*, 772 F.2d at 519, but at the very least put Defendant Schacht on notice that he was potentially jointly liable with Donahue for copyright infringement, even if vicariously liable.

> entities for direct and indirect commercial and financial gain including gains derived by the infringements of GMAN's works described in this FAC, which infringements were directly caused, substantially caused, induced and/or authorized by these to DEFENDANTS outside the scope of the practice of law.

(FAC ¶ 142.) This case hews close to *Carpenter*. In *Carpenter*, as here, the opposing party asserted causes of action jointly against the firm and its partners. 195 Cal. App. 4th at 386. Additionally, the cause of action was "based upon conduct undertaken by the individual plaintiffs in the course of the law firm's business, and there were no allegations concerning conduct by either of the individual plaintiffs that was unrelated to the business or goals of the law firm." *Id.* at 386–87. The same logic applies here. The FAC alleges the same causes of action against both Schacht and Donahue. Plaintiff alleges no conduct by Defendant Schacht that does not arise from the business or goals of Donahue—even if those goals were "outside the scope of law," (FAC ¶ 142), they apply equally to both Defendants. *Cf. Carpenter*, 195 Cal. App. 4th at 387 ("[I]f the law firm and its partners or associates who acted on behalf of the firm are named and they are all represented by a partner or associate of the law firm, the principles of *Trope* and *Witte* should apply, unless it can be shown that the representation of partners or associates related to the protection of their individual interests from realistic personal exposure.")

Finally, a review of Attorney Defendants' anti-SLAPP Motion to Strike, (ECF No. 77), supports the Court's finding that Schacht has no personal liability separate and apart from Donahue. For example, Attorney Defendants counter Plaintiff's arguments throughout the Motion to Strike as a singular entity. (*See, e.g.*, ECF No. 77-1, at 17 ("The crux of Plaintiff's allegations against the Attorney Defendants is the filing of Trademark Applications."); *id.* at 26 ("Donahue and Schacht did register the two domain names, but they do not own or control those domain names.").) The issues, research, and legal arguments were the same for both Donahue and Schacht. *Cf. Transamerica Life Ins. Co. v. Rabadi*, No. CV 15-7623-RSWL-Ex, 2016 WL 3921138, at *4 (C.D. Cal. July 20, 2016) (finding no potential individual liability for attorney litigant where the issues,

research, and legal arguments were the same). The Attorney Defendants sought, in their original anti-SLAPP motion, to recover attorney's fees for both Schacht and Donahue. (*See* ECF No. 77-1, at 28.) They did not advance the theory of Schacht's personal liability until it became apparent that *Trope* would not allow Donahue to recover fees. While the Court understands the ebb and flow of litigation, Attorney Defendants' previous arguments do not reveal any distinction between Schacht and Donahue's positions.

In order for Defendant Schacht to recover attorney's fees there must be a showing that the fees sought to be recovered are attributable to the protection of individual interests from "realistic personal exposure." *Carpenter*, 195 Cal. App. 4th at 387. No such showing has been made here. Plaintiff alleges the same causes of action against both Defendant Schacht and Defendant Donahue. Their liability is joint and several. Thus, allowing Defendant Schacht to recover attorney fees would create disparity compared to a similarly situated pro se nonattorney. *Trope* controls this case and Defendant cannot recover attorney's fees under the anti-SLAPP fee-shifting statute.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Attorney Fee. (ECF No. 175.)

**IT IS SO ORDERED.**

Dated: November 17, 2017

Hon. Janis L. Sammartino
United States District Judge